( Decided July 8th, 1865.)

THE FIREMENS' INSURANCE COMPANY *vs.* THE MAYOR & CITY COUNCIL OF BALTIMORE.

CODE, ART. 81, SEC. 97—CONSTRUCTION OF: STOCKS OF INCORPORATED INSTITUTIONS—TAXES ON: MANDAMUS.—The Firemens' Insurance Company is a joint stock corporation of the city of Baltimore, subject to the provisions of the 97th sec. of Art. 81 of the Code; and is bound by the express terms of that section to furnish to the Appeal Tax Court the list of stockholders, with their places of residence, and amount of stock held by each, and having failed or refused so to do, the appropriate remedy to enforce a compliance with the obligation so imposed, was by the writ of *mandamus*.

——: ——: ——: ACTS OF 1847, CH. 277, SEC. 10, AND 1864, CH. 391.—The necessity of furnishing a list of stockholders, &c., might be obviated by the corporation agreeing with the Appeal Tax Court to pay an ascertained amount of money as a tax upon the stock liable to city taxation, in lieu of an assessment upon the individual shares: this construction of the said 97th sec. is consistent with the Act of 1847, ch. 277, sec. 10, of which it is a codification; and by the Act of 1864, ch. 391, such agreement is in express words authorized to be made by joint stock corporations.

SHARES OF STOCK TO BE ASSESSED AT CASH VALUE.—The shares of stock of joint stock corporations are liable to be assessed at their cash value, at the time of the assessment.

THE ACT OF 1862, CH. 251, EXPLAINED BY 1865, CH. 119, has no application to the question here in issue, but was intended to subject to city taxation every species of property actually situated within the city, notwithstanding the residence of the owner might be elsewhere.

Insurance Co. *vs.* Mayor & C. C. of Balto.

SHAREHOLDERS, AND NOT JOINT STOCK CORPORATIONS, TAXABLE OWNERS OF CAPITAL STOCK.—The objection that the corporation, as an entirety, and not the shareholders, is the owner of its capital stock, seems to be more ingenious than sound: the revenue laws treat the stockholder, as he is, in fact, the owner of so much property, to be estimated at the actual value of his stock, and subject to be taxed thereon for local purposes.

BASIS OF TAXATION OF STOCKS.—The arbitrary valuation adopted for convenience of collection, as the basis of State taxation, is not designed to govern the local authorities by which the tax is imposed and collected in a different manner,—not from the corporation, but from stockholders,—for which reason the Code requires the list to be furnished.

APPEAL from the Superior Court of Baltimore city.

The appellee filed a petition on the 16th May 1863, praying for a *mandamus*, to be directed to the President and Directors of the Fireman's Insurance Company, a corporation located and doing business in Baltimore city, requiring the President of said Company to return to the Appeal Tax Court of Baltimore city, a list of the stockholders of said Company, with the place of residence of each stockholder, and the amount of stock held by each.

The petition assumed the right of the appellee to demand, and the obligation of the appellant to return, such list, by force of the 97th section of Article 81 of the Code of Public General Laws.

A rule having been served on the appellant to show cause, an answer was filed, setting forth that the appellant was a corporation, existing under the laws of Maryland, having a capital stock of $378,000, divided into twenty-one thousand shares, of the par value of $18 per share; that of said number of shares, seventeen thousand nine hundred and ninety were owned and held by residents of Baltimore city; one thousand seven hundred and three by residents of the State outside of Baltimore city; and one thousand nine hundred and thirty-seven by non-residents of the State. The answer, in effect, insisted that the said stock ought to be assessed at its par value, as fixed by its charter, and that the tax, since the Act of 1862, ch. 251, was payable to the city on the entire capital, and was properly payable by the Com-

38    v.23.

298 MARYLAND REPORTS.

Insurance Co. vs. Mayor & C. C. of Balto.

pany, and not by the respective shareholders. The answer set forth, in detail, the assessments made by the Appeal Tax Court in 1862 and 1863; the payment, under protest, for 1862; the rejection of its offers to pay for 1863, &c., &c.

The following agreement and papers, therein referred to, constitute the evidence in the cause:

"It is agreed, in this case, that the annexed communication, addressed to John L. Thomas, Jr., City Counsellor, from the Appeal Tax Court, shall have the same effect as testimony as though sworn to and taken under a commission regularly issued, except that the respondents do not admit that the 'cash value as shown by almost daily sales,' was sixty dollars, but do admit that the Judges of the Appeal Tax Court, upon enquiry made by them, were informed and believed that such was the cash value, and that actual sales had been made accordingly. It is further agreed that the communication from Wm. Schley to John L. Thomas, dated April 8th, 1863, shall be admitted as evidence, and have the same effect as if sworn to and taken under a commission regularly issued.

WM. SCHLEY, for Respondent."

"APPEAL TAX COURT, Balto., April 15, 1863.

"John L. Thomas, Esq., City Counsellor:

"Dear Sir:—In 1862, J. I. Cohen, Esq., President of the Baltimore Fire Insurance Company, appeared before us and agreed to pay, for the shareholders of that institution, the city tax on two hundred and sixty thousand dollars, ($260,000,) and did pay the tax to the City Collector.

"In 1862, Henry Duhurst, Esq., President of the Firemens'. Insurance Company, appeared before us and wished to make an agreement with us, and then pay under protest; we stated to him that we could not entertain that proposition; that if he made an agreement with us, the matter was settled, if we could not agree, then we wished a list of shareholders; he then made the agreement with us to pay for the shareholders the city tax on five hundred and seventy thousand dollars, ($570,000,) on the 24th day of February

1863.   We notified those two institutions (by sending them a copy of sec. 97, Art. 81, Code 1860) to furnish a list of shareholders.   Mr. Duhurst, of the Firemens', appeared before us, and handed to us the following statement:

"17,990 shares held in the city,

    1,937   "      "   out of the State,

    1,073   "      "   in the State, (county.)

    21,000   "   total."

"Being six hundred and ninety-seven more shares in the city and out of the State than was returned to us in 1862. The cash value of their stock, on or about the 1st of March 1863, as shown by the almost daily sales, was $60 per share:

"17,990 shs. in city,

    1,937   "   out of the State.

    19,927   "   at $60 per share, -      -      - $1,195,620

On which we propose to make a reduction of      295,620

Leaving amt. proposed      -      -      -      - $900,000."

"Mr. Duhurst declined to pay the tax on that amount. We then demanded a list of the shareholders; he then stated he would lay the matter before the Board of Directors.   Mr. Schley, counsel for the Firemens' and Baltimore Insurance Companies, appeared before us, and wished to docket an amicable suit, to test the right of assessing shares at cash value.   Our reply was, that we wished a list of shareholders furnished to us, and if they wished to test the matter, they could do so afterwards.   His reply was, that they were bound to furnish us the list, and would do so in a few days. After waiting a reasonable time, we addressed them a communication, demanding a list of shareholders, which has not been complied with.   In reply to our notice of the 24th of February, Mr. J. I. Cohen handed us the following statement:

"15,956 shares in city,

    3,021   "   in the counties,

    1,023   "   out of the State."

"15,956 shares in city,
1,023 out of State.

16,979 at $28 per share, - - - - $475,412
On which we propose to make a reduction of - 100,412

Leaving amt. proposed - - - - - $375,000."
"Mr. J. I. Cohen declined to pay for shareholders on that amount, and, as already stated, refuses, by non-compliance, to furnish list of shareholders.

"Respectfully yours,

WILLIAM SPRIGG,
JOSEPH SIMMS,
GEORGE W. GORDON."

"John L. Thomas, Esq., City Counsellor:
"My Dear Sir:—This communication is addressed to you, in your official capacity as City Counsellor, and is made by me, in my capacity as counsel for the Firemens' Insurance Company of Baltimore, and as counsel for the Baltimore Fire Insurance Company.

"The Judges of the Appeal Tax Court have formed the opinion, (and honestly and sincerely entertain the opinion, I am sure,) that they are authorized and required to assess the stock of said Companies, respectively, at the market value, and that they are to assess each respective holder residing in the city, and all other stockholders not residing elsewhere in this State, as individuals, in respect of the shares of stock held by them, and that it is the duty of the respective Presidents to furnish them with a list of the stockholders, and with the number of shares held by them, respectively, together with a designation of the residence of each stockholder, unless, in lieu of such individual assessments, the Company should make an agreement to pay a certain specified amount of money as the tax upon the stock held by persons not residing elsewhere within this State. On this theory the Appeal Tax Court has proposed to the Firemens' Insurance Company the sum of $900,000, and to

the Baltimore Fire Insurance Company the sum of $375,000, as the basis of taxation, respectively, upon the shares of stock held by persons not residing elsewhere in the State.

"The amounts now proposed greatly exceed the amounts which were adopted as the respective basis of assessment for the year 1862. Rather than have any controversy with the city, these Companies paid, last year, the amounts exacted from them, respectively, and it is within my personal knowledge that the Firemens' Insurance Company paid under protest, so as to have an equitable ground of reclamation for the excess, in case, at any further period, it should be conclusively established that the Company had paid too much. But the amounts now proposed, are so very far beyond the assessable value of the stock, in the opinion of the respective boards of said Companies, and of their counsel, that it is considered by the board as a duty to their respective stockholders to test the question by an amicable judicial proceeding. In this respect the boards are in the same relation to their respective stockholders that the Judges of the Appeal Tax Court sustain to the city, and must act according to their sincere and honest convictions of duty.

"My own opinion is very decided, that the true basis of assessment of each of these Companies is the par value of the capital fixed by the charters of the respective Companies; and that this is the true basis, irrespective of the intrinsic value of the stock, or of its market value. And although it is not a question in which the Companies I represent have any interest, yet I am strongly inclined to think that in respect to these Companies, and of other Companies in like circumstances, the entire capital is assessable for local purposes, and that the tax is payable, not by the individual shareholders, but by the respective corporations. I am willing to adopt any mode that will be apt and efficient to settle the questions; and there is no earthly reason why the questions between us should not be promptly settled, and in an amicable spirit. The President and Directors of these Companies, and I, may be in error, so it is not

impossible that others, however firm in their opinions, may be in error.

"One idea was, that the question could be raised on a *mandamus*, issued at the instance of the Judges of the Appeal Tax Court, against Mr. Duhurst, as President of one Company, and against Mr. Cohen, as President of the other Company, requiring them to furnish lists of the shareholders of the respective Companies. The whole matter would arise upon our answers to the petitions, and the case could be heard at once before the Superior Court, and the unsuccessful party could appeal to the next June Term, and as the case would be one of a class entitled to be heard at the first term, we could argue the case in June, and have a final decision by the 1st of July.

"Another course would be, and, except in one particular, it is the course which I understood you to prefer, we will pay so much of the tax claimed as will cover the par value, and appear to suits, to be docketed by consent, in which you will claim in each case the excess demanded, and I will procure the engagement of each Company to pay for all the stockholders (if the entire capital shall be assessable for city purposes) such further amount, if any, as may be recovered, or for all the stockholders, not residing elsewhere within the State, if only those shares are assessable for city purposes, not held by persons residing elsewhere in the State. This will save the assessors the trouble of resorting to the individual stockholders, and ensure the prompt and punctual payment of any further amount that may be recovered.

"By agreements in each case, all matters of form could be waived, so as to present fairly and fully the real points in controversy. These modes of settling the questions are better than the remedy by *certiorari*, or by injunction, although some of the questions, at least, could be as well settled by either of those last mentioned remedies, but not so promptly and not so conclusively.

"When I spoke of paying so much of the tax claimed as is due on the par value of the stock, I mean payment, of

course, at the ordinary time, and on the ordinary terms. I should be glad to hear from you at your earliest convenience, after consultation with the Judges of the Appeal Tax Court, so that we may prepare, without any unnecessary delay, the proper papers.    April 8th, 1863.

"Sincerely, &c.        WM. SCHLEY."

The Court below, (MARTIN, J.,) on hearing, ordered the *mandamus* to issue in terms as prayed, and from that order the Insurance Company brought this appeal.

The cause was argued before BOWIE, C. J., and BARTOL, GOLDSBOROUGH, COCHRAN and WEISEL, J.

*Wm. Schley,* for the appellant :

1st. The *habitat* of the appellant is Baltimore city.    It never had any office elsewhere, or any agency anywhere. See for illustration :    Act of 1841, ch. 23, sec. 16.    Act of 1852, ch. 337, sec. 17.    *State vs. Mayhew,* 2 *Gill,* 490. *Marshall vs. Balto. & Ohio R. R. Co.,* 16 *How.,* 314.    2 *Inst.,* 703.    *Ontario Bank vs. Brunnell,* 10 *Wend.,* 186, 192.

2nd. By the Act of 1862, ch. 251, the whole capital of the appellant was liable to taxation for city purposes, without regard to the residences of the respective shareholders, and and at its par value, without regard to any accumulations or losses.

The appellant is proprietor and owner of its entire capital, just as the capital of a natural person engaged in business, belongs to such person.    And, as in the case of a natural person, all personal property, without regard to its actual *situs,* would follow the domicil of the owner. *Latrobe vs. Mayor & C. C. of Balto.,* 19 *Md. Rep.,* 21.    So in the case of the appellant, all its property appertains to its *habitat.*    The appellant, in fact, owned nothing outside of the territorial limits of Baltimore city.    The object of the Act of 1862, it is conceived, was to place the appellant as an owner of property in Baltimore city, in the matter of taxation, in the same relation to the city as it had been

placed in relation to the State, by the 93rd section of the 81st Article of the Code. By that section, the State tax is not imposed on the respective shares, to be paid by the respective shareholders, but upon the capital stock, *in solido,* to be paid by the corporation. And the clause, "whether the respective corporations have or have not declared any dividend or earned any profits, and without regard to the place or residence of the stockholders," necessarily imports that the par value was intended to be thereby made, for State taxation, the basis of assessment, instead of the estimated cash value at the various periods of making assessments. That section does not contemplate the intervention of assessors, or of the Appeal Tax Court in cases embraced by it; that is, in cases of corporations having capital stock, properly so called. Section 94 applies to corporations having no capital stock, properly so called, and there the property and assets, not the capital stock, of the corporation is to be assessed. It may have been considered better to adopt a fixed basis, even if an arbitrary one, than a fluctuating and uncertain valuation. No Company ought to be allowed to say, when called on to pay taxes, that its stock is worth less than its chartered capital, and if, from supervenient causes, the assets have become reduced in value, it may be assumed that the State, on application, would not refuse to reduce the capital. And if experience shall demonstrate that the fixed basis is unjust in its practical operation, it is in the power of the Legislature to substitute some other standard.

In examining the tax laws of Maryland, prior to the adoption of the Code, we find that there were frequent changes. In *The State vs. Mayhew,* 2 *Gill,* 496, the Court decided, that, under the Act of 1843, ch. 289, the shareholder was personally liable, and that the tax was not a lien on the respective shares; but that the only funds provided for payment of the tax were declared dividends, or earned profits. When, therefore, a new assessment was directed by the Act of 1847, ch. 266, it was provided by the

5th section, that in making that assessment, the stock of all incorporated Companies should be assessed at their full cash value, and notice was first to be given as therein directed. By the 6th section of said Act, the effect of the decision in the case of *The State vs. Mayhew,* was obviated by making it incumbent on the corporation to pay the State taxes, without regard to earnings or profits. That Act, however, was merely temporary, extending only to that assessment. That assessment was superseded by another. In the Act of 1852, ch. 377, sec. 18, the tax, as to non-residents, was declared to be a lien on the shares of such stockholders respectively; but nothing is there said as to resident stockholders. The 93rd section makes no such distinction. It directs payment on the whole capital, and semi-annually. Of course payment could only be made on the chartered capital at its par value, as periodical assessments for every six months could not be made by County Commissioners, or the Appeal Tax Court. Section 93 seems to have been intended as a permanent basis of taxation as to the several corporations to which it applies. It ensures uniformity, and precludes all suspicion of unfairness or bias. As respects the State, therefore, it would seem to be clear that the par value of the stock, as fixed by the charter, is the fixed basis of assessment. And if the Act of 1862, ch. 251, makes this corporation liable to the city in like manner as it is liable to the State, then the par value is the proper basis of taxation. See, on this point, *State vs. Bank of Newbern,* 1 *Dev. & Battles,* 218. *The People vs. Supervisors of Niagara,* 4 *Hill,* 22. *Bank of Utica vs. City of Utica,* 4 *Paige,* 399. *Hays vs. Steamship Co.,* 17 *How.,* 596.

3rd. If the preceding points are sustained, then this is not a proper case for *mandamus. Lex neminem cogit ad vana.* The writ does not issue as of course, or on demand. It only issues where some just or useful purpose may be answered by the writ. *Angell & Ames on Corporations,* 631, 632. *Tapping on Mandamus,* 4, 18, (76 *Law Lib.,* 58, 69,)

39      v.23.

and cases there cited. *Mayor Chapman vs. Morrow.* See list of cases not to be reported, 23 *Md. Rep.*

4th. But even if the Act of 1862 does not apply, the question still occurs, is the defendant (an Insurance Company having capital stock properly so called) bound to furnish the demanded list? The list and agreement mentioned in section 97, seem to be intended as alternates, and the duty of the corporation to return a list, only arises where there is failure to make an agreement. The power to agree does not extend to any corporation having capital stock, properly so called. This will appear upon a comparison of the several sections, from 93 to 95, both inclusive. And it supports the position that the par value is the basis of assessment, whether the tax be payable by the corporation or by the shareholder. The fact that the State levies the tax for State purposes on the capital stock, without regard to profits or losses, determines the basis of assessment.

5th. And if the par value of the stock is the basis of taxation for State purposes, then the par value must be the assessable value of the stock for local purposes, whether the tax for local purposes be payable by the corporation or by the respective shareholders. Bill of Rights of Const. of 1852, Art. 12. Code, Art. 81, secs. 1 and 94.

The power of taxing is an attribute of sovereignty. The Mayor and City Council have no original, inherent, independent power, as a Municipal Corporation, to levy a tax, or make an assessment. All its powers, in this respect, are merely delegated, subject to Legislative revocation or control. They are not chartered rights. The counties and the city are, *pro hac vice*, selected agents of the State, acting under a special power. *State vs. Merryman,* 7 *H. & G.,* 79. *State vs. Milburn,* 9 *Gill,* 103.

It will be found, upon examining the various Acts of Assembly, that the same assessment has always been the basis of taxation, both for local and State purposes. Act of 1841, ch. 23, secs. 20, 52 and 60. Act of 1842, ch. 269, sec. 4. Act of 1845, ch. 203, sec. 3. Act of 1852, ch. 377, secs. 1 and 22. Act of 1858, ch. 241, sec. 5.

The only exception is made by section 6 of Art. 81 of the Code, as respects slaves in Baltimore. The State has exempted property, and such exemption extends to taxation for local purposes. Act of 1841, ch. 23, sec. 1. Act of 1847, ch. 266, sec. 5. Act of 1852, ch. 377, secs. 1 and 33. Act of 1858, ch. 241, sec. 1. 1 Code, Art. 81, secs. 3 and 4. Act of 1826, ch. 23, and the case of *Mayor & C. C. of Balto. vs. Balto, & O. R. R. Co.*, 6 *Gill*, 296. The case of the *Mayor, &c., vs. The Greenmount Cemetery*, 6 *Md. Rep.*, 533, is not to the contrary, for assessments for benefits, although in one sense a tax is not considered as a burden.

6th. In any event, the order for a *mandamus* must be reversed, because the 97th section was repealed by the Act of 1864, ch. 391. The repeal of the law on which the proceeding is founded, and which alone created the duty (if, indeed, it was ever a duty) to return the required list, precludes the issue of a *mandamus* to enforce the performance of an act which has ceased to be a duty. *Keller vs. The State*, 12 *Md. Rep.*, 322. *Day vs. Day*, 22 *Md. Rep.*, 530.

*Wm. Price* and *Benjamin Price*, for the appellee, argued:

1st. That the duty and obligation is imposed, by law, on the President or other proper officer of the Insurance Companies, to return the list called for by the petitioner, by the time specified by law, and that the list must be first returned to the Appeal Tax Court, as a condition precedent to the making of any other arrangement in reference to the amount of the assessment. Act of 1841, ch. 23, sec. 17. Act of 1858, ch. 241, sec. 2. Act of 1847, ch. 266, secs. 9, 10. Art. 81, secs. 95, 96, 97 Pub. Gen. Code. Art. 81, sec. 98 Pub. Gen. Code.

2nd. That this duty is an imperative one, as binding on the Appeal Tax Court to compel the lists, as it is upon the Insurance Companies to furnish them. Art. 81, sec. 99, Pub. Gen. Code. Art. 81, sec. 102, Pub. Gen. Code. Act of 1847, ch. 266, secs. 7, 8, 9, 10. Act of 1841, ch. 23, sec. 17. Act of 1858, ch. 241, sec. 2.

3rd. That instead of returning said lists, the Appeal Tax Court have the power to agree with the Companies to pay the assessment and tax on the capital stock for the shareholders; but if no such agreement can be made, then the assessment must be upon the stock owned by each individual shareholder.   Art. 81, secs. 91, 98, Code Pub. Gen. Laws.   Act of 1841, ch. 23, sec. 17.   Act of 1858, ch. 241, sec. 2.   Act of 1847, ch. 266, sec. 10.

4th. That in case the Appeal Tax Court and the Companies agree upon an assessment, the Appeal Tax Court has the right to insist, as the true basis of assessment, that the capital stock be valued at its cash value at the time of its agreement, and not at the par value, ascertained by the charters of the respective Companies.   Act of 1841, ch. 23, sec. 17.   Act of 1847, ch. 266, sec. 5.   Act of 1852, ch. 337, sec. 18.   *State vs. Mayhew,* 2 *Gill,* 488.

5th. That in case no agreement be made, then in assessing the value of the stock in the hands of shareholders, the Appeal Tax Court has the right to assess the same at its cash value at the time of the assessment, and not at its par value, as ascertained by the charter of the Companies issuing the stock.

6th. That the par value of the stock, as ascertained by the respective charters, is not the true basis of valuation in either of the above cases.   *State vs. Mayhew,* 2 *Gill,* 488.

7th. That the reason for assessing stock at its cash value at the time of the assessment, is obvious, from the fact that by this means can its true value be alone ascertained.   If any other mode be adopted, then you make a discrimination between different kinds of the same property, and the assessment is not, therefore, uniform.   Bill of Rights, Art. 13.

8th. That the duties of the City Collector and of the Appeal Tax Court are to assess, and of the City Collector to collect, the taxes that may be assessed; and that these local tribunals having ascertained the true basis, according to law, there is no appeal from their valuation.   Ord. No. 10, Revised Ord. 1858.   Ord. No. 11, Revised Ord. 1858.   Ord. No.

33, 1862.  *O'Neal, et al., vs. Va. & Md. Bridge Co.*, 18 *Md. Rep.*, 1.

9th. That another obvious reason for compelling the Companies to return the lists, is found in the fact that it is impossible to tell how many shares of stock are to be assessed, until you know who are the stockholders, for whenever any stock is held by an institution exempt by law from taxation, or by the State itself, these shares must be stricken from the list before the estimate is made of the number of taxable shares. See sec. 4, Art. 81, of Pub. Gen. Code:

10th. That the law gives to the Mayor and City Council of Baltimore the power to prescribe the mode and manner in which taxes shall be assessed, levied and collected for municipal purposes, and that the City Authorities have passed such ordinances, and that they are of binding force on all persons or corporations.  Art. 4, sec. 11, Pub. Local Law.  Revised Ords. 1858, Nos. 10, 11.  Ord. 1861.

BARTOL, J., delivered the opinion of this Court:

We concur in the opinion of the Superior Court in this case, and think the *mandamus* was properly ordered.  The appellant is a joint stock corporation in the city of Baltimore, subject to the provisions of the 97th section, 81st Art. of the Code; and was bound, by the express terms of that section, to furnish to the Appeal Tax Court the list of stockholders, with their places of residence, and the amount of stock held by each, and having failed or refused to do so, the appropriate remedy to enforce a compliance with the obligation so imposed, was by the writ of *mandamus*.

The learned Judge, in his opinion, found in the record, decided that "the necessity of furnishing a list might be obviated by the corporation agreeing with the Appeal Tax Court to pay an ascertained amount of money as a tax upon the stock liable to city taxation, in lieu of an assessment upon the individual shares," thus saving the city the necessity of resorting to the individual stockholders.

Inasmuch as no such agreement was made in this case, it is not material to the decision of this appeal to express any judgment upon that proposition, the more especially as all doubts that may have before existed upon the construction of the Code in this particular, have been removed by the Act of 1864, ch. 391, which, in express words, authorizes such agreement to be made by joint stock corporations. Nevertheless, as this question has been argued and considered, we deem it proper to state that this Court fully concurs with the ruling of the Superior Court on this point also.

The proviso in the 97th section is a little vague, only because of the use of the definite article, in referring to the agreement mentioned in the preceding (95th) section. But taking the whole section together, and construing it in connection with the preceding sections, it seems to be clear, that the meaning of the proviso is, to authorize corporations having joint stock to make *such* agreement, as by the 95th section, Savings Banks were allowed to make. Any other construction would render the proviso in the 97th section useless and unintelligible. For it is clear that the other provisions of the section apply only to joint stock corporations; and the only object of the proviso is to provide an alternative whereby such corporations may be exempt from the duty of furnishing a list of stockholders. This construction is consistent with the words of the Act of 1847, ch. 277, section 10, of which section 97 is a codification.

The whole Court agree, also, with the Judge of the Superior Court, in the opinion that the shares of stock are liable to be assessed at their cash value at the time of the assessment.

In the argument of this appeal, several objections to these conclusions have been urged; some of which we shall briefly notice.

It is contended that the appellant, being a corporation, having its *"situs"* or *"habitat"* in the city of Baltimore, is subject to be taxed, as an inhabitant of the city, upon its

aggregate capital stock, which, it is said, is in law the property of the corporation, and not the property of the individual shareholders. The provisions of the Act of 1862, ch. 251, are relied on in support of this view. It is clear to us, that the Act of 1862 has no application to this question. Its object was to subject to city taxation every species of property actually situated within the city, notwithstanding the residence of the owner might be elsewhere; but it does not refer to shares of stock in a corporation. This is rendered more plain by the Act of 1865, ch. 119, where such shares are expressly excepted, and which last Act we consider as merely declaratory of the meaning of the Act of 1862, ch. 251, in this respect.

The position that the corporation, as an entity, and not the shareholders, is the owner of its capital stock, seems to us to be more ingenious than sound, at least so far as it affects the question before us. The object of the revenue system is, to subject to the common burden of taxation, for the support of government, every species of property in the hands of the owners. This burden is imposed upon the owner of the property, and when that consists of shares or interest in a joint stock corporation, represented by certificates held by the stockholder, he is treated by the revenue laws, as he is, in fact, the owner of so much property, to be estimated at the actual value of his shares of stock, and subject to be taxed thereon, for local purposes, in the county or city of his domicil.

In imposing the general tax on such property, for the support of the State government, the Legislature has chosen to take as the basis, the aggregate capital of the Company. Code, Art. 81, sec. 93. But it does not follow that the local taxation is to be imposed on the same basis. There is nothing in the legislation on this subject which so declares, nor is there any good reason to support that proposition. By the terms of the organic law, every person ought to contribute for the support of the government, according to his actual worth in real and personal property; and it is most

just and consonant with this rule, that a corporator should be taxed upon his shares of stock according to their actual value.

The arbitrary valuation adopted for convenience of collection, as the basis of State taxation, is not designed to govern the local authorities, by which the tax is imposed and collected in a different manner; not from the corporation on its capital stock, but from the individual shareholders, according to the actual value of their shares; and for that purpose the Code requires the list to be furnished, which would be unnecessary, if the views of the appellant were correct. In support of this construction, see the Act of 1847, ch. 266, sec. 5.

The provision of the Code, under which this *mandamus* was asked, has not been repealed by the Act of 1864, except for the purpose of re-enacting the same with amendments, not changing the original provision; that Act, therefore, interposes no obstacle to the affirmance of the order in this case.

*Order affirmed.*

(Decided July 10th, 1865.)