(Decided 30th June, 1874.)

---

JOHN B. EMORY, President of THE MONUMENTAL FIRE INSURANCE COMPANY OF BALTIMORE *vs.* THE STATE OF MARYLAND.

*Right of the State to a Mandamus to compel the payment by the President, Cashier or other officer, for the time being, of an Incorporated company, to pay the State tax assessed upon its Capital Stock—To whom Taxes, assessed on the Capital stock of Incorporated companies, under the Acts of 1868, ch. 371, and 1870, ch. 422, sec. 18, and 1872, ch. 419, are payable—Construction of the Act of 1868, ch. 471, secs. 88 and 92, the General Corporation Law and of the Act of 1870, ch. 394, exempting Mortgages from taxation.*

By sec. 93, of Art. 81 of the Code, amended by the Act of 1872, ch. 419, which imposed upon the president, cashier, or other proper officer of the incorporated companies, the duty of paying the tax assessed upon the capital stock of such companies, it is intended to reach the funds of the companies in the hands of such officers, without reference to the individua

who may, for the time being, be in office; and to an application by the State for a mandamus to compel the payment of such tax, it is no defence that the individual officer against whom the writ is sought, was not in office when the tax became due and payable.

Taxes imposed under the Act of 1868, ch. 371, and the Act of 1870, ch. 422, sec. 18, on the capital stock of incorporated companies, are payable directly to the State Treasurer, as provided by sec. 93 of Art. 81 of the Code, and their payment may be enforced by a writ of mandamus at the instance of the State.

By the Act of 1872, ch. 419, which repealed sec. 93 of Art. 81 of the Code, and enacted another section in lieu thereof, there was no repeal of the duty of the officers of the incorporated companies to pay the taxes levied upon the capital stock thereof, directly to the Treasurer of the State, the same duty being retained in the amended section as it stood in the abrogated one; consequently the payment to the Treasurer of the State of a tax on the capital stock of an incorporated company, levied under the Act of 1872, ch. 419, according to the assessment thereof made by the Comptroller as provided by the Act of 1872, ch. 90, may be enforced by a mandamus at the instance of the State.

The Monumental Fire Insurance Company of Baltimore, was originally chartered by the Act of 1867, ch. 219, as a Fire insurance company. By the Act of 1870, ch. 91, its charter was amended, and new and additional powers were conferred upon it; whereby it was authorized "to purchase, improve, lease, hold and dispose of property, real, personal and mixed, to borrow and lend money, to make advances upon lands and buildings, to give and receive security for loans made to or by the company." The amended charter was accepted, and under the powers thereby conferred, the company proceeded to invest a large part of its capital, and re-invest the same as paid in, in loans secured by mortgages of real and leasehold property, and claimed that in the assessment of the State taxes on its capital stock for the years 1870, 1871 and 1872, respectively, it was entitled to exemption to the extent of such investments, under the Act of 1868, ch. 471, secs. 88 and 92, the General Corporation Law, and the Act of 1870, ch. 394, exempting mortgages from taxation. HELD:

That the company was not entitled to the exemption claimed either under the Act of 1868, or the Act of 1870.

The Act of 1870, ch. 394, exempting mortgages from taxation applies only to the mortgage securities themselves, and has no application to the taxation of the capital stock of corporations, whether it be assessed at its par value or at its actual market value.

APPEAL from the Superior Court of Baltimore City.

The opinion of this Court, together with the following opinion of Judge DOBBIN of the Superior Court, furnish a sufficient statement of the case:

This is an application for a mandamus to compel the respondent, as President of the Monumental Fire Insurance Company of Baltimore, to pay to the State Treasurer the State taxes levied upon the capital stock of that Company for the years 1870, 1871 and 1872.

The application is resisted upon the following grounds:

1. That John B. Emory was not the President of the Company when these taxes accrued, but became so only on March 4, 1873.

2. That the 93rd section of the 81st Article of the Code, by which taxes, such as those claimed in this case, were made payable to the Treasurer of the State, was repealed by the Act of 1872, ch. 419, and that the taxes of 1870 and 1871, if payable at all, are not now payable to the State Treasurer directly, but to the City Collector.

3. That the Act of 1870, chap. 422, by which a tax of one-fourth of one cent is imposed, changes the subject of taxation from *capital stock*, to the *value* of capital stock, and that this new subject of taxation was not included in section 93 of Article 81, and the taxes thereon are, therefore, not payable to the State Treasurer directly, but to the collector of the city, and by him to the Treasurer.

4. That the capital of this Company is for the most part invested in mortgages, which are by express law not subject to tax, and that therefore, that portion so invested should not be taxed, since such tax, it is claimed, would be in effect a tax upon mortgages, and as the mortgaged property pays a tax, the tax upon the capital so invested would be a double tax.

These defences will be considered in their order.

1. The 93rd section of Article 81st, and the amendment made by the Act of 1872, chap. 419, impose the duty of

paying these taxes upon the president, cashier, or other proper officer, and is intended to reach the funds of the Company in the hands of such officers, without reference to the individual who may for the time being, be in office. The taxes are assessed upon the capital stock of the Company, and the " president, cashier, or other proper officer," is only the conduit through which the money is to flow from the Company to the State.    Through this official channel for the time being, all taxes must come, whether they accrued during the incumbency of the present holder of the office, or of any previous one.    The present officer, John B. Emory, is supposed to have received all the assets of the Company charged with the payment of all liabilities due by the Company, and in virtue of such provision, control and duty, he is amenable to the process of this Court.

If this be not so, who is to pay the State taxes levied upon the shares of stock of a corporation? No other mode than through the agency of these officers is provided by law, and if the proposition contended for be true, then the easiest mode of evading taxation, would be to change the officer as soon as the taxes fall in arrear.

2.  When the Code was adopted, the 81st Article, imposed the State tax upon the *par value* of the shares of stock of corporations, and put upon the officers of the corporation the duties prescribed in section 93.    In 1872 the Legislature determined to change this basis of taxation, to the *market value* of the shares of stock, but it was not intended to change, in any respect, the mode of payment into the Treasury of the State, and they passed the Act of that year, chap. 419, to effect this amendment.    The constitution of the State (Art. 3, sec. 29,) enacts that the General Assembly, in amending any Article or section of the Code of Laws of this State, shall enact the same as the said Article or section would read when amended ; so that for the purpose of this amendment, the old section had to

be repealed, in order that the amended section should take its place.  But such a repeal, for such a purpose, cannot be said to repeal that part of the law which it was obviously not the intention of the Legislature to alter, and which re-appears, in the same form, in the substituted section.  That provision must be taken to stand as it did before, except that, for more verbal harmony, the new amendment and the old provision are incorporated in a new section, and that substituted for the former one.  In this view there was no repeal of the duty of the officers of the corporation to pay the taxes directly to the Treasurer of the State, the same duty being retained in the amended section as it stood in the abrogated one.

3. The revenue laws of Maryland, in so far as they impose taxes on capital invested in corporate enterprises, mean always to act upon the same subject of taxation, that is, the shares of stock by which such capital is represented. Prior to the Act of 1872, chap. 419, the taxes were levied upon the *par value* of such shares, and afterwards, by the provisions of that Act, they were levied upon the *market value* of such shares.  The subject being the same in both cases, though the rate is changed, the duty of the officers of the corporation, both under the 93rd section of the 81st Article of the Code as it originally stood, and the amended section as it now stands, is the same, that is, to pay directly to the Treasurer of the State.

4. This Company was originally a Fire Insurance Company, and now, by an amendment to its charter, it has had conferred upon it enlarged powers.  In no part of its charter, however, is it to be found that it is to be free from any burthen of taxation which would apply to any other corporation lending its money to those who would borrow it.  Confessedly, if it lent its money, being part of its capital, upon the mere personal obligation of the borrower, such capital so loaned, could not be claimed to be exempt from taxation.  So also, if it lent its money upon the

credit of one who is the known owner of houses and lands, and whose claim to be so trusted is based upon the liability of those houses and lands to be sold to pay his debts, the capital so lent would be still liable to be taxed in the shares of stock by which it is represented. How then can it alter this liability to taxation, if the Company instead of relying upon the general security afforded by the ownership of property by their debtor, shall choose to take a specific security upon this same property by way of mortgage? The exemption of mortgages from taxation, when the thing mortgaged is a house, should no more exempt the corporate capital lent upon it than when the same capital is lent upon other descriptions of property not subject to taxation. Take the case of a loan by this same Company to a manufacturer, upon the security of the goods of his manufacture in his own hands. Such goods are exempt from taxation, but there would seem to be no good reason why money so lent should therefore be relieved from taxation. The fallacy seems to consist in treating such a transaction as an investment by which the nature of the corporate capital is changed, and the absolute ownership of something else is acquired instead. But such is not the effect of a loan on mortgage.

The mortgagee is still the owner of the money and the mortgagor of the thing mortgaged, the money being subject to the use of the mortgagor during the currency of the loan, and the thing mortgaged subject to liability to be sold to repay the loan. There is no change then, in the capital of a company so disposed of, and if liable to taxation before a loan, though on mortgage, it will continue so afterwards.

The policy of the revenue laws of Maryland is to make every description of property, real and personal, the subject of fair and equal taxation. In doing this, difficulty is encountered in the floating and unstable nature of some kinds of property, as cash in circulation, for example, and

even the most careful enumeration of the subjects of taxation sometimes fails to accomplish the desired object. But when money assumes the form of aggregated capital to be embarked in corporate enterprises, then the result is more easily attained by levying the tax upon the shares of stock which represent such capital.

In such case, care must be taken to avoid the evil of double taxation, since this capital may be invested in some of the things which are already taxed, and if the capital so invested is taxed as shares of stock, and the things in which it is invested is also specifically taxed, it is a double taxation. This is guarded against by the 3rd section of the 81st Article of the Code, by providing that when a corporation whose capital stock is made subject to taxation, becomes the *owner* of such things, *they and not the capital stock*, shall be exempt from taxation. Under this provision, if the mortgages held by this Company were not already exempt from taxation by the Act of 1870, ch. 394, they would be exempt by the force of it.

In considering this subject, there must always be kept in view the distinction which the taxing laws clearly made when mortgages were taxed, between the mortgage which represented the money loaned, and the property pledged for its repayment. Both were subjected to taxation because the two together represented twice the value of either singly. Taxes upon both, therefore, were not liable to the objection of being double taxation upon the same subject-matter, because each tax was in fact the proper proportionate tax which the thing it was levied upon ought to bear.

I find nothing then, in any of the reasons alleged, why this mandamus should not issue, and I now order it accordingly.

The cause was argued before BARTOL, C. J., BOWIE, MILLER and ALVEY, J.

*Charles Marshall*, for the appellant.

Can the taxes for the years 1870 and 1871, imposed by the Mayor and City Council of Baltimore for the use of the State, under the Act of 1868, ch. 371, and the taxes imposed by the Mayor and City Council of Baltimore, for the use of the State for 1870 and 1871, under the Act of 1870, ch. 422, if due by the company at all, be collected by mandamus against the appellant?

Section 93 of Article 81, of the Code, directs that the State tax imposed on the *capital stock* of banks and other institutions, shall be paid directly to the Treasurer, whether the Company has earned or declared a dividend. This refers to a tax on the *capital stock*, and not on the *value of the shares* of stock.

Section 105 of the same Article provides, that as the payment of State taxes on capital stock, &c., of banks, &c., has been otherwise provided for, such capital stock should be excluded from assessment by the Mayor and City Council of Baltimore.

As the law then stood, the State tax on the capital stock of a corporation was payable directly to the State Treasurer, and was not to be collected like other State taxes, through the agency of the Mayor and City Council. But the Act of 1868, ch. 371, directs the Mayor and City Council to levy an annual tax of 19 cents in the hundred dollars for the State, to be collected in the manner prescribed by the Code. The petition of the appellee sets forth that the Mayor and City Council did make such levy for the years 1870 and 1871, upon the capital stock of the Monumental Fire Insurance Company.

The Act of 1868, ch. 371, operated to repeal sections 93 and 105 of Article 81, of the Code, so far as the taxes provided for by that Act are concerned, and made the same collectible only by the city collector, as other State taxes are collected, by the city for the use of the State, as provided by the Act of 1868, ch. 366.

The Act of 1870, chapter 422, imposes a tax of one fourth of a cent upon every hundred dollars worth of taxable property, and directs that the tax shall be annually *levied, collected, and paid over to the State Treasurer.*

The petition alleges that the Mayor and City Council of Baltimore did levy this tax for the years 1870 and 1871, upon the capital stock of the Company. The Act of 1870, ch. 422, therefore, removed the tax provided for by it from the operation of sections 93 and 105 of the Code, and made those taxes payable to and collectible by the city collector, like other State taxes, and not payable directly to the Treasurer, as is here claimed.

Again, before this petition was filed, section 93 of Article 81, of the Code, under which it is claimed that the taxes levied on the corporation became payable directly to the Treasurer, was expressly repealed by the Act of 1872, ch. 419.

The duty of the officer of the company, to pay those taxes directly to the Treasurer, if such duty ever existed, ceased on the repeal of the 93rd section.

As to the taxes of 1871 and 1872, claimed in the petition, if they were ever demandable, they must be collected through the agency of the city collector, or the State must provide some other mode of enforcing the payment of them.

The claim for the taxes imposed by the Act of 1872, ch. 419, presents directly the question as to the legality of the tax sought to be collected under that law. The law makes this tax payable to the Treasurer directly, and it is conceded that the State can proceed by mandamus to enforce its payment, if legally assessed. The Monumental Fire Insurance Company, by its original charter, (Act of 1867, ch. 219,) was authorized, among other things, to invest its capital and funds in mortgages, &c. The amended charter (Act of 1870, ch. 91,) gave the company power to " purchase, improve, hold and dispose of property, real,

personal and mixed ; to borrow and lend money ; to make advances upon lands and buildings; to give or receive security for loans made by or to said company, &c., &c." The amendment authorizes the company to provide for the re-payment of its loans in a certain manner, and to secure the same by mortgage.

The demurrer admits that the amendment was accepted by the company in the month of March, 1870, and that, thereupon, the company discontinued the insurance business altogether, and has ever since prosecuted its business under the powers conferred by the amended charter. It is admitted that the company proceeded to invest its capital in loans on mortgages of real estate during the year 1870, and that on the first of January, 1871, there was invested of its capital, in mortgages authorized by its amended charter, the sum of $141,100. It continued to invest its capital, and re-invest the same as paid in, in like mortgages, during the year 1871, and, on the first day of January, 1872, it had invested on such mortgages the sum of $162,161.11 of its capital. On the first of January, 1873, the investments of mortgage amounted to $181,275.82.

It is also admitted by the demurrer, that the taxes claimed for 1870 and 1871, under the Acts of 1868, ch. 371, and 1870, ch. 422, are levied upon the whole capital of the company, including that part which is invested in mortgages, and that in assessing the *value of the shares* of stock for the purpose of taxation under the Act of 1872, ch. 419, there was included the large part of the capital invested in mortgages.

Under the laws of Maryland, as they stood when the taxes of 1870, 1871 and 1872, claimed in the petition, were levied, so much of the capital of the Monumental Company as was invested in *mortgages* was exempt from taxation, whether the tax be imposed directly upon the capital stock of the company, or indirectly, by taxing its

shares. By the Act of 1870, ch. 394, mortgages are declared to be exempt from taxation.

Besides this the Act of 1868, ch. 471, relating to corporations, provides by its 88th section, that certain debts and dues referred to in said section, might be secured by mortgages on real or leasehold property, by certain kinds of corporations therein named; and also provides that "any such mortgage and the mortgage debt created thereby, are declared to be exempt from taxation, *the property so mortgaged to the corporation being taxed in the hands of the individual member or mortgagor.*"

The 92nd section of the Act of 1868, ch. 471, extended the 88th section, with others, " to corporations which may be found in this State, for the purpose of loaning money on real or personal property."

Even if this 92nd section was repealed by the Act of 1872, ch. 178, approved April 1st, 1872, the same day that the Act of 1872, ch. 419, was approved, it was, nevertheless, in force when the taxes claimed for 1870 and 1871 were levied, and is applicable to them.

But the repeal of section 92, of the Act of 1868, ch. 471, by the Act of 1872, ch. 178, did not affect the matter at all, because by section 216, of the Act of 1868, ch. 471, the benefits of that Act are extended to all other corporations, so far as the same may be applicable to such corporations. It is therefore submitted that so far as the taxes of 1870 and 1871 are concerned, whether they be taxes on the *capital stock* of the company, or taxes on the shares of said stock, they are illegal so far as they include the part of the capital invested in non-taxable mortgages.

As to the tax on the capital itself, such a tax is a direct tax on the investments of that capital.

The taxes of 1870 and 1871, are levied upon the value of the stock, every hundred dollars worth being taxed at the rates fixed by the Acts of 1868, ch. 371, and 1870, ch. 422.

If any part of the capital of the company was invested in non-taxable property, a tax on that capital must be virtually a tax on that property. And if as is admitted in this case, in estimating the value of the stock for the purpose of taxation, that part of the capital invested in mortgages is computed as a constituent part of that value, the tax is necessarily imposed on the mortgages. *Bank of Commerce vs. New York City*, 2 *Black*, 620 ; *Van Allen vs. The Assessors*, 3 *Wallace*, 581.

That a tax on shares of stock is in effect, a tax on the property of the corporation, has been established by repeated decisions in this State. *The Tax Cases*, 12 *G. & J.*, 117 ; *State vs. Stirling*, 20 *Md.*, 515 ; *Mayor, &c., of Baltimore vs. B. & O. R. R. Co.*, 6 *Gill*, 295 ; *Gordon vs. Mayor, &c., of Baltimore*, 5 *Gill*, 231 ; *Firemen's Ins. Co. vs. Mayor, &c., of Baltimore*, 23 *Md.*, 296.

If the stock represents an interest in the property of the company, a tax on one is necessarily a tax on the other. If the stock be taxed, the property represented by that stock is exempt, and if the property be exempted, the stock cannot be taxed without violating the exemption. The State allows every citizen who comes to pay taxes upon his property, to strike from the list all mortgages he holds, and taxes him upon the residue. The decision in this case practically denies this right to the company and its stockholders. The tax is clearly a double tax, and therefore illegal.

*John H. Handy* and *Attorney General Syester*, for the appellee.

Sec. 93, of Art. 81 of the Code, does not impose a tax, but only provides for the mode and basis on which it shall be paid. It required both that section and the Act of 1868, chap. 371, to complete the provisions for the imposition, levy, assessment and collection of such taxes.

The Act of 1872, chap. 419, is complete in itself, and only in this respect amended sec. 93, of Art. 81 of the Code. It did not alter or change the mode by which the tax was to be collected or paid. The repeal being for the purpose of re-enactment, could only be constitutionally accomplished, as it was done, and the repeal and re-enactment being one and the same act, there was no real repeal of that section, the same being found in the Act as amended. The amendment, "therefore, interposes no obstacle" to the mandamus. *Insurance Company vs. Mayor, &c. of Baltimore,* 23 *Md.,* 312.

And, inasmuch as the theory of the appellant is that the remedy by mandamus is taken away entirely, the repealing law would be unconstitutional and void as impairing the obligation of contracts.

This Court says, in the case of the *State vs. Mayhew,* that there is no other remedy for the collection of the taxes under a similar provision. Hence the right would be impaired in the total destruction of the remedy. *State, use of Isaac, vs. Jones,* 21 *Md.,* 437 ; *Bronson vs. Kinzie, et al.;* 1 *How.,* 316, *et seq.; McCracken vs. Hayward,* 2 *How.,* 612, *et seq.; Green vs. Biddle,* 8 *Wheaton,* 75.

But, if this were not so, the Act of 1872, chap. 419, does not repeal the Act of 1868, chap. 371, and the latter Act imposing the tax of 19 cents for 1870 and 1871, also provides the mode by which it is to be collected, viz : in the way provided at that time by the Code. At that time there was no other mode by which the tax on the capital stock of such corporations could be collected, except as provided by sec. 93, Art. 81 of the Code. That mode then became a part of the Act of 1868, and as such pointed out the mode by which all taxes imposed under it should be collected.

The error in the appellant's theory as to the effect of the Act of 1868, upon the 105th sec. of Art. 81 of the Code, arises from the use of the word "assessment." That word

is sometimes used by the Legislature in the sense of "imposition," again, in the sense of "levy," and occasionally in the sense of "collect." Its meaning in sec. 105 is, that it shall be excluded from the collections made by the county and city collectors, "the payment" being provided for by prior sections of the Code.

The Act of 1868 imposes a tax of 19 cents, and provides for a "levy" of the tax, "to be collected in the manner prescribed by the Code of Public General Laws." That Act did not mean to change the mode of collection, and, so far from doing so, expressly saves it.

The 93rd section of Article 81 of the Code, requires the proper officer "to pay to the Treasurer the State tax imposed on the capital stock of said banks." Whatever tax is imposed must be at some assessed value of the stock, and whether it is at the "par" or "market value," it is equally the tax on the capital stock. Nor does it matter, whether the basis of assessment be regulated by the express terms of the law, or by judicial construction or usage.

The act of 1872, chapter 419, providing for the market value as the basis of its assessment, in the proviso, speaks generally of it as "the tax on its capital stock." And such will be found to be the case in other preceding Acts.

The capital stock of the Insurance Company is not exempt, because the capital is invested in non-taxable mortgages. The stock is owned by the shareholder. The mortgages by the company in its corporate entity. The shares of the stock of the National Banks are liable to State taxation, notwithstanding the capital is invested largely in United States Bonds. The tax, therefore, is no more illegal because the mortgage is exempt, than is the tax on the Bank stock, the bonds being exempt. The stock of this corporation no more represents its property than does the Bank stock represent its property. The stock does not belong to the corporation. *Ins. Co. vs.*

*Mayor & C. C. of Balt.*, 23 *Md.*, 311; *Howell vs. The State*, 3 *Gill*, 29, 30; *State vs. Mayhew*, 2 *Gill*, 494, 503; *Van Allen vs. The Assessors*, 3 *Wall.*, 583–4; *National Bank vs. Commonwealth*, 9 *Wall.*, 358–9; *Lionberger vs. Rouse*, 9 *Wall.*, 473.

The capital of every kind owned by corporations having capital stock so called, which was taxed, was already exempt by sec. 3 of Art. 81 of the Code.

When, therefore, the laws, either general or special, were passed, exempting mortgages from taxation, they could not be construed to apply to mortgages held by such corporations, which were already exempt.

Section 92 of the Act of 1868, chap. 471, relied on in the answer, has been repealed by the Act of 1872, chap. 178, and confines the provisions from secs. 84 to 91, both inclusive, of that Act, to corporations organized under that Act. The exemption of mortgages, such as it is claimed this corporation holds, was made in sec. 88.

The company was chartered in 1867, chap. 219, and had no powers to take such mortgages as are contemplated by secs. 87 and 88 of the general Corporation Act of 1868, ch. 471. It was amended by the Act of 1870, chap. 91, by which such powers were conferred. Section 219 of the Act of 1868, chap. 471, therefore did not extend the provisions of the 87th and 88th sections to this corporation, because not applicable, and it extended only to those corporations, theretofore created, to which it was applicable. This corporation, created under a different name and with different powers, in 1870, chap. 91, was not within this general provision, because created afterwards. The Act of 1872, chap. 178, explains that the corporations referred to are corporations formed under the general Corporation Act.

The reason given in the 88th section, however, is an answer to this defence. It is because "the property so mortgaged to the corporation being taxed in the hands of the individual member or mortgagor."

BARTOL, C. J., delivered the opinion of the Court.

This is an appeal from an order of the Superior Court, directing that a peremptory writ of mandamus be issued, requiring the appellant to pay to the Treasurer of the State certain taxes for the years 1870, 1871 and 1872, levied upon the capital stock of the company.

The taxes claimed are 19 cents on the $100, imposed by the Act of 1868, ch. 371, and $\frac{1}{4}$ of one cent on the $100, laid by the Act of 1870, ch. 422, sec. 18. These taxes, making $19\frac{1}{4}$ cents on the $100, it is alleged were levied by the Mayor and City Council of Baltimore for each of the years, 1870 and 1871, and are payable to the Treasurer of the State, as provided by the Code, *Art.* 81, *sec.* 93. And for the year 1872, a tax of 19 cents on each $100 in value of the shares of capital stock of the company, levied under the Act of 1872, ch. 419, according to the assessment thereof made by the Comptroller as provided by the Act of 1872, ch. 90.

The answer of the appellant sets up several defences, and a replication thereto was filed by the appellee; and by agreement of counsel the cause was heard as upon demurrer to the answer; without prejudice as to the issues of fact raised by the pleadings.

We shall proceed to consider the several defences relied on in the answer.

1st. It is said the *mandamus* ought not to be granted against the appellant; because he was not President of the company before the 4th day of March, 1873, a period subsequent to the time when the taxes were due and payable, if due at all. No better or more satisfactory answer to this objection is required, than is found in the opinion of the Judge of the Superior Court. Upon this point, we are content to rest our judgment upon what has been so well said by him; merely referring in support of his views to *The State vs. Mayhew*, 2 *Gill*, 487.

2nd. It is contended that the payment of the taxes for 1870 and 1871, cannot be enforced by this proceeding, for

two reasons—*First*, because under the Acts of 1868, ch. 371 and 366, and 1870, ch. 422, sec. 18, they were required to be levied by the Mayor and City Council, and to be collected by the local collector appointed for the City, and were not payable directly to the Treasurer of the State; the Act of 1868 having operated to repeal secs. 93 and 105 of Art. 81 of the Code; and if this be not so, then *secondly*, because by the Act of 1872, ch. 419, sec. 93, Art. 81 of the Code was expressly repealed, and the power of the Treasurer (if he ever had it,) to require payment to himself of the taxes levied in 1870 and 1871, was thereby taken away.

In our judgment, this argument is based upon a misconstruction of the Acts of Assembly referred to.

By 1868, ch. 371, the levy of an annual tax of 19 cents in the $100, was directed to be made by the Mayor and City Council; but the Act expressly required that the tax "*should be collected in the manner prescribed by the Code.*" Now the Code Art. 81, sec. 93, as to the State tax on the capital stock, required the same to be paid by the proper officer of the corporation, *to the Treasurer of the State.* So far from repealing this provision of the Code, the Act of 1868 recognizes it as in force, and expressly directs that the tax thereby required to be levied, "*should be collected as prescribed by the Code of Public General Laws;*" That is as respects the tax upon capital stock by the Treasurer of the State; and as respects the tax upon other property, by the local collector. Chapter 366 of the same year provides for appointment of collectors and prescribes their duties, in regard to the collection of State taxes upon other property, but has no reference to taxes levied upon the capital stock of the incorporated companies.

The argument on the part of the appellant, that because the Act of 1868 directs the levy to be made by the Mayor and City Council; it follows that the particular tax in question must be collected by the local collector, finds no

support in the provisions of the Act. On the contrary, as we have before seen, the mode of collection is declared to be the same as prescribed by the Code. There is nothing in the Act of 1870, ch. 422, sec. 18, which prescribes a different mode of collecting the tax thereby imposed. We conclude therefore that under the Acts of 1868 and 1870, the taxes for the years 1870 and 1871, for which this suit was brought, were payable to the Treasurer of the State.

The next question to be considered is the effect of the Act of 1872, ch. 419, which repealed sec. 93, Art. 81, of the Code, and enacted another section in lieu thereof. It is argued that " as the Act of 1872, contains no reservation as to taxes payable to the Treasurer directly under sec. 93, which might remain unpaid, the power of the Treasurer to require them to be paid directly to himself, is taken away."

The same question arose in *" The Insurance Co. vs. Mayor & C. C. of Balto.,* 23 *Md.,* 296." That was a proceeding by *mandamus,* to compel the company to return a list as required by the Code, Art. 81, sec. 97. The objection was made, that the 97th section had been repealed by the Act of 1864, ch. 391, " and the repeal of the law on which the proceeding was founded, and which alone created the duty, if duty it was, to return the required list, precluded the issue of a *mandamus* to enforce the performance of an act, which had ceased to be a duty." (Argument of Mr. Schley, p. 307.) But the Court held that the provision of the Code, under which the mandamus was asked, had not been repealed by the Act of 1864, except for the purpose of re-enacting the same with amendments, not changing the original provision ; and that the Act of 1864 interposed no obstacle to the affirmance of the order granting the mandamus.

It will be found by reference to the Act of 1864, and the provision of the Code then under consideration, that

the question then decided was the same as the one now presented, and arose in the same way. The Constitution, Art. 3, sec, 29, requires the General Assembly, in amending any Article or section of the Code, "to re-enact the same as the said Article or section would read when amended." To comply with this provision, it was necessary to repeal sec. 93, "in order that the amended section should take its place."

The provision of the original section requiring the taxes to be paid to the Treasurer, is re-enacted in the section as amended, and the right to demand them having accrued, is not taken away by the Act of 1872; which has the same operation as a supplementary Act, would formerly have had, leaving unimpaired, the rights and obligations which accrued under the original law, while the section as amended applies to cases arising subsequently. Under the Act of 1872, a State tax for that year, of 19 cents in the $100, was payable by the appellant to the Treasurer, assessed upon the capital stock *according to its market value*, to be assessed as provided by the Act of 1872, ch. 90. As to this last, the only defence relied on by the appellant, is that the company is entitled to exemption, to the extent that its funds or capital is invested in mortgages. A similar exemption on the same ground, is claimed also, by way of reduction of the taxes assessed for the years 1870 and 1871. This brings us to the consideration of the third ground of defence relied on in the answer.

3rd. The company was originally chartered by the Act of 1867, ch. 219, as a *Fire Insurance Company*. By the Act of 1870, ch. 91, its charter was amended, and new and additional powers were conferred upon it; whereby it was authorized "to purchase, improve, lease, hold and dispose of property, real, personal and mixed, to borrow and lend money, to make advances upon lands and buildings, to give and receive security for loans made to or by the company."

The answer states that the amended charter was accepted, and under the powers thereby conferred, the company has proceeded to invest its capital or a large part thereof, and re-invest the same as paid in, in loans secured by mortgages of real and leasehold estate, and claims that in the assessment of the State taxes on its capital stock for each of the years 1870, 1871 and 1872, it is entitled to exemption to the extent of such investments.

This exemption is claimed, *first*, under the Act of 1868, ch. 471, secs. 88 and 92, (the general Corporation law,) and, *secondly*, under the Act of 1870, ch. 394, which exempts mortgages from taxation.

As to the Act of 1868, ch. 471, it is very clear to us that its provisions have no application to this company. Section 88 exempts from taxation certain mortgages therein described, held by such corporations as are mentioned and referred to in that and the preceding sections, from section 84, inclusive, but this company does not fall within these provisions. It is not one of the class of corporations to which those provisions refer. Section 92, which makes these provisions "applicable to corporations which may be formed in this State, for the purpose of loaning, on real or personal property," has reference only to corporations formed under the general Corporation Act, and cannot, therefore, apply to this company, which had before been incorporated, under the special Acts of 1867 and 1870. That such is the meaning of section 92 is more obvious by reference to 1872, ch. 178, by which this section was re-enacted, and which in terms refers to corporations *"heretofore or hereafter formed under the provisions of the general incorporation Act."*

The ground upon which the exemption is claimed under the Act of 1870, ch. 394, is that the capital stock of the company represents its property, and where any portion of the latter is by law exempt from taxation, the capital stock is also to that extent exempt.

It is unnecessary, for the purposes of this case, to enter upon a discussion of this general proposition, the question here turns upon the construction of the Act of Assembly of 1870, ch. 394. In order to entitle a party to claim exemption of any property from the common burden of taxation, it must clearly appear that it comes within the terms of the law under which the exemption is claimed. The words of the Act are, "nor shall any tax of any kind be assessed, levied or collected on any mortgages of any kind, or on any mortgage (or) bill of sale, upon any property in this State."

We think in passing this Act, the Legislature designed only to exempt from assessment and taxation the *mortgage debt, as such*. The words refer to the instrument, *the mortgage itself*, and declare that *it* shall not be subject to taxation. The effort here is to give such a construction to this law as will exempt from taxation the capital stock of all corporations, to the extent that their loans may be secured by mortgage. The law subjecting the capital stock to taxation, makes no such exemption. And in our opinion the Act of 1870 does not apply to the case. By the Act of the last session, 1874, ch. 483, which repeals and re-enacts, with amendments, Art. 81 of the Code, mortgages are exempt from taxation in general terms, as in the Act of 1870 ; and yet the same law, by the 3rd section, specially exempts "all shares of capital stock of building associations, of which the funds and capital stock are invested in mortgages on real or household property subject to taxation ; to the extent of such investment." Such a special provision would be useless, if the appellant's construction of the Act of 1870 were correct. We take this as a clear expression of the intent of the Legislature, that the Act exempting mortgages must be held to apply only to the mortgage securities themselves, and has no application to the taxation of the capital stock of corporations, whether it be assessed at its par value, or at its

actual market value. For these reasons we are of opinion that the appellant is not entitled to the exemption claimed either under the Act of 1868, or the Act of 1870.

The order of the Superior Court, awarding the writ of *mandamus*, will be affirmed, and the cause will be remanded, to the end that the writ may be issued as prayed.

*Order affirmed, and*
*cause remanded.*

(Decided 1st July, 1874.)