(Decided 30th January, 1879.)

---

THE APPEAL TAX COURT OF BALTIMORE CITY *vs.* ISAAC RICE. SAME *vs.* JOHN S. JACKSON. SAME *vs.* CHARLES W. JANSON. SAME *vs.* ELIJAH MILBOURNE. SAME *vs.* HAMILTON CLARK. SAME *vs.* JAMES ROBERT MARLEY.

*What is necessary to sustain an Exemption from the Taxing Power of the State—Building Association Mortgages, not Exempted from Taxation under the Act of 1876, ch. 260—What Class of Mortgages Exempted under that Act—Declaration of Rights, Art. 15—Taxation of Mortgages to the Mortgagees, and of the Mortgaged Property to the Mortgagors—Shares of Stock of Building Associations, Assessed and Taxed to their Owners under the Acts of 1876, ch. 260, and 1878, ch. 413.*

To make out a case of exemption from the taxing power of the State, so essential to the support of its government, it is incumbent upon

Appeal Tax Court of Balt. City *vs.* Rice. Same *vs.* Jackson. Same *vs.* Janson. Same *vs.* Milbourne. Same *vs.* Clark. Same *vs.* Marley.

the party asserting the claim, to show that the power to tax in the particular case, has been clearly relinquished, and if this has not been done in clear and explicit terms or by necessary implication, the question, whether or not the exemption has been granted, must be solved in favor of the State.

The peculiar class of mortgages adopted and used by Building Associations was not embraced in the clause of the Act of 1876, ch. 260, sec. 1, which exempted from taxation "mortgages upon property in this State, and the mortgage debts respectively secured thereon."

This exemption of the Act of 1876, extended to and embraced only mortgage debts and mortgages upon property securing mortgaged debts, as commonly understood, that is to say, a conveyance of property by one person to another, as security for the payment of a definite, ascertained sum of money, and which, so far as the property will go, secures the payment of the specific sum, at all events and irrespective of any future contingency. Such a conveyance usually contains a covenant to repay, which raises a personal obligation on the part of the mortgagor.

The 15th Art. of the Declaration of Rights, does not prohibit the Legislature from taxing to the mortgagees, investments in mortgages, notwithstanding the property mortgaged to secure such investments may be taxable and taxed to the mortgagors.

The shares of stock of Building Associations, whether they be redeemed, unredeemed or paid up shares, under the Acts of 1876, ch. 260, and 1878, ch. 413, must be assessed and taxed to their respective owners.

APPEALS from the Baltimore City Court.

The appellees in proceedings under the Act of 1876, ch. 260, sec. 28, petitioned the Court below to have stricken from the assessment under that Act, certain shares of stock belonging to them respectively, as members of building associations. The Court (PINKNEY, J.,) granted the relief prayed by order passed the 25th May, 1878; and the respondent, the Appeal Tax Court of Baltimore City, appealed. The cases are further stated in the opinion of the Court.

Appeal Tax Court of Balt. City *vs.* Rice.   Same *vs.* Jackson.   Same
*vs.* Janson.   Same *vs.* Milbourne.   Same *vs.* Clark.   Same *vs.* Marley.

The causes were argued before BARTOL, C. J., MILLER,
ALVEY and ROBINSON, J.

*A. Leo Knott, State's Attorney for Baltimore City,* and
*Charles J. M. Gwinn, Attorney General,* for the appellant.

A building or homestead association or land company
is a corporation possessing general powers to acquire and
deal with property of any description which it may deem
necessary to enable it to carry on its operations, and to
promote the objects for which it was created.   It is fully
recognized by the Acts under which it is organized as the
owner, in its corporate character, of its franchises, and of
the property in which its capital is invested.   1868, *ch.*
471, *sec.* 48.

The holders of shares in building or homestead associa-
tions have agreed to pay for such shares by instalments,
(1868, ch. 471, sec. 84,) and have secured the payments of
the unpaid instalments and their other dues as members
by a mortgage upon real or leasehold property, or by
hypothecation of their shares of stock.   1878, *ch.* 471,
*sec.* 88.   These mortgages do not secure the payment of
any debt, but do indemnify the corporation against any
default on the part of the members in any of certain
specified duties of membership.   *Robertson vs. Am. Home-*
*stead Association,* 10 *Md.,* 409; *Shannon vs. Howard Mutual*
*Building Association,* 36 *Md.,* 394–396; *Lester vs. Log*
*Cabin Association,* 38 *Md.,* 118–120; *Williar vs. Balto.*
*Butchers' Loan and Annuity Association,* 45 *Md.,* 562.

The holders of shares in associations or companies
organized for the purpose of dealing in land, have paid in
whole or in part for the stock which they hold, and if
credit was given for any portion of the amount due, have
secured such sum by the hypothecation of their shares,
and by giving a mortgage upon real or personal property.
1872, ch. 178, sec. 92.   These associations do not belong
to this class of companies.

The holders of shares in any such association or company are not, as the owners of such shares, proprietors of any part of the corporate property. They are the holders of properties which are wholly distinct from the property owned by the corporation. *Regina vs. Arnaud,* 9 *Ad. & Ell., N. S.,* 806, 817, (58 *E. C. L.,* 816;) *Watson vs. Spratley,* 10 *Exc. Rep. H. & G.,* 235, 238; *Cesena Sul. Co. vs. Nicholson,* 1 *L. R., Exc. Div.,* 451; *McCulloch vs. Maryland,* 4 *Wheat.,* 436; *Dartmouth College vs. Woodward,* 4 *Wheat.,* 700, 701; *Gordon vs. Appeal Tax Court,* 3 *Howard,* 150; *Van Allen vs. Assessors,* 3 *Wallace,* 584; *Delaware Railroad Tax Case,* 18 *Wallace,* 229, 231; *Farrington vs. Tennessee,* 95 *U. S.,* 686, 687, 691; *Dewing vs. Perdicaries,* 96 *U. S.,* 196.

The holder of a share in such association or company cannot dispose of any part of a mortgage debt or other security in which the capital of the corporation is invested. If he desires to terminate his connection with the corporation, in the manner usually prescribed in such associations, he is not entitled to receive a part of the assets of the corporation proportioned to his ownership of its stock, but is, on the contrary, entitled only to receive a sum of money proportioned to his ownership of such stock. A transaction of this kind imports nothing more than a purchase by the corporation of the shares of stock of the member who withdraws, which leaves the corporation the owner, not only of the corporate property, but also of the shares of stock of which it has become possessed by purchase.

The shares of stock in such corporation are in nowise affected by the *situs* of the real and leasehold property belonging to the corporation, or by the location of its principal office. They are intangible properties which have no other *situs* except the domicile of their owner.

Appeal Tax Court of Balt. City *vs.* Rice.   Same *vs.* Jackson.   Same *vs.* Janson.   Same *vs.* Milbourne.   Same *vs.* Clark.   Same *vs.* Marley.

The property of which such association or company is possessed may be real estate, or real and leasehold estate having a fixed *situs* in the City of Baltimore. The character of the property thus held does not determine the character of the shares of stock in such corporation. Whatever may be the nature of the property of the corporation, its shares of stock are personal property. *Shelford on Joint Stock Companies*, (*2nd Eng. Ed.*,) 147; *Myers vs. Peregal*, 2 *De Gex, Mac. & Gord.*, 618, 621; *Hilton vs. Giraud*, 1 *De Gex & Smale*, 83; *Ashton vs. Lord Langdale*, 4 *De Gex & Smale*, 402; *Taylor vs. Linley*, 2 *De Gex, Fisher & Jones*, 84; *Hayter vs. Tucker*, 4 *K. & J.*, 243; *Sparling vs. Parker*, 9 *Beav.*, 450; *Walker vs. Milne*, 11 *Beav.*, 507; *Williams' Personal Prop.*, (*4th Am. Ed.*,) 8, *and note* 1.

The theory of the individual interest of shareholders in the property of a corporation is utterly without foundation. It was attempted to be maintained by counsel in *Calcutta Jute Mills Co. vs. Nicholson*, 1 *L. R., Exc. Div.*, 443; but Chief Baron KELLY, in disposing of that part of the argument, said: "You cannot divide a company as you can a partnership consisting of several partners. You cannot say that four thousand pounds of this money belongs to Cesena shareholders, five hundred pounds to French shareholders, and five hundred pounds only to English shareholders." *Cesena Sulphur Co. vs. Nicholson*, 1 *L. R., Exc. Div.*, 451. The whole capital is the property of the corporation, and not the property of a partnership. *Ibid, page* 451; *Huddleston, B., pages* 456, 457.

The shareholder may, for a valuable consideration, dispose of his shares, but such transfer does not diminish the amount of the corporate property. The corporation may, for a valuable consideration, alienate a portion of its property, but such sale does not divest the shareholder of any portion of his property.

Appeal Tax Court of Balt. City *vs.* Rice. Same *vs.* Jackson. Same *vs.* Janson. Same *vs.* Milbourne. Same *vs.* Clark. Same *vs.* Marley.

If the property owned by the corporation be, in its essential nature, different from the property owned by the shareholders in such corporation, the single circumstance that particular property owned by the corporation is exempted from taxation, cannot avail to exempt its shares of stock from taxation in the hands of the owners of such stock. *Emory vs. State,* 41 *Md.,* 58. The immunity engrafted upon such particular property enured directly to the advantage of the corporation holding such property by lessening the charges upon its revenue, and indirectly to the advantage of the shareholder by giving him the chance of a larger dividend upon his shares. These were consequences which the Legislature must have foreseen and intended. It certainly could neither have foreseen nor intended that the exemption of mortgages from taxation would be claimed as operating not only to exempt from taxation such mortgages in the possession of their corporate owner, but also to exempt the shares of stock in such corporation owned by individual citizens from taxation as their property.

The appellees claim that the shares of stock owned by them are exempted from taxation, because the capital of the respective associations in which they hold such shares, is invested in securities exempted from taxation. Now, mortgages are not the only securities which enjoy this advantage. There are certain descriptions of State bonds upon which the same immunity is engrafted; and the bonds of the United States are not subject to taxation by this State. Is it true that a corporation having a capital stock divided into shares which cannot claim that its property, or shares of stock, are exempted from taxation by any express provision in its charter, may, in any year, by investing its whole capital in State bonds, which are exempted from taxation, or in United States bonds, relieve its shares of stock from taxation so long as such investment may continue?

Appeal Tax Court of Balt. City *vs.* Rice.   Same *vs.* Jackson.   Same *vs.* Janson.   Same *vs.* Milbourne.   Same *vs.* Clark.   Same *vs.* Marley.

Is it true that any such corporation may, in any year, by investing a part of its capital stock in such exempted securities, claim a proportionate reduction in the taxable value of its shares of stock?

Is it true that any corporation which is the holder of a mortgage exempted from taxation, may, in any year, claim a proportionate reduction in the taxable value of its shares of stock?

If the pretensions of the appellee are well founded, all these claims may be justly made by corporations whose capital is invested, in any year, in whole or in part, in such securities. Such pretensions are not well founded.

The cases of the *Mayor & City Council of Balto. vs. The Balto. and Ohio Railroad Company*, 6 *Gill*, 294, 295, 296, cannot be accounted as an authority adverse to the authorities upon which the appellant relies. It may be true that, under the rulings in that case, the shares of stock of a corporation represent the franchises and real and personal property of a corporation; and that, when such shares are exempted from taxation, the real and personal property and franchises of the corporation are likewise exempted from taxation. But, if the converse of this proposition could be held to be true, it is clear, that if the real and personal property belonging to a corporation be exempted from taxation, and its franchises are not exempted from taxation, *all* the property represented by its shares of stock is not exempted from taxation; and the shares of stock, therefore, cannot be held to be wholly exempted from taxation. The franchises of the corporations in which the appellees are shareholders are not exempted from taxation; and as the shares of stock, therefore, of these corporations cannot be held to be wholly exempted from taxation, and the duty of ascertaining the taxable values of such shares, and of assessing and collecting the taxes thereon, necessarily rests in the discretion of the Legislature, (*State vs. Sterling*, 20 *Md.*, 516, 517,) it must

be assumed that the Legislature, in directing shares of
stock in such corporations to be assessed at their market
value, determined that the value of the franchises of cor-
porations, whose investments were exempted by law from
taxation, was equal, because of the exemption thus
granted, to the market value of such shares; and that
such shares ought, therefore, to be valued and assessed at
their market value.

*W. Burns Trundle*, for the appellees, Rice, Jackson and
Janson.

The shares of stock, assessed to the appellees in a build-
ing association, are not shares of stock, as the term is ap-
plied to shares of bank stock, but are simply shares in, or
part of certain mortgage investments.   As, for example,
A, B and C have the unquestionable right to lend their
money to D, and to take from him three promissory
notes, secured by mortgage of D's real estate, and enjoy
an immunity from taxation as to said notes, representing
their respective parts or shares in the mortgage invest-
ment; so, they have clearly the same right if they become
incorporated, for their mutual convenience, and take the
mortgage in the corporate name.   The becoming incor-
porated does not alter the real nature of the transaction.
*Providence Bank vs. Billings*, 4 *Peters*, 514; *State vs.
Sterling*, 20 *Md.*, 502.

The reason which gave rise to the enactment of the
exemption now under consideration, applies with as much
force to the case at bar as to the case of an individual
loan upon mortgage security.   It is known, that the
exemption in question was made upon the broad principle,
that any tax upon mortgages and mortgage debts
necessarily falls on the mortgagor.   If the lender must,
out of his interest, pay the tax, he will demand to be
reimbursed by the borrower, or else decline to part with
his money; the borrower, therefore, covenants to pay the

tax, and as he already pays taxes on his land, he is subject to double taxation. *Savings and Loan Society vs. Austin*, 46 *Cal.*, 415.

So here, if the unredeemed shareholders must pay taxes on their money invested in mortgages, the redeemers or mortgagors must covenant to repay it; such tax thereby enhancing the cost to the borrower, and imposing upon him double taxation. If it be replied that the tax is laid upon the shares as such, and is to be paid by the shareholders individually, still it is patent that a portion of this tax must fall on the mortgagor, in addition to the tax on his property, because it is an expense incidental to this mode of borrowing money, and must come out of the profits of the association in which he is mutually interested with the unredeemed shareholders. So that, even if not required by covenant in the mortgage to pay it directly, he must pay a part of the tax indirectly in this manner.

The funds of the association are invested exclusively in mortgages upon taxable property in this State; those funds consist solely of the shares of the appellees and other members, or, which is the same thing, the money paid in on said shares. The shares then being but parts of the mortgage debts, how can they be said to have any taxable value apart from the mortgage debts? Being then in fact but parts of the mortgage debts, the exemption of the latter exempts the former; the exemption of the whole operating as an exemption of every part.

Suppose the Act contained no exemptions, would it then be lawful, in view of the 15th Article of the Bill of Rights, and the construction it has ever received by this tribunal, that it prohibits double taxation, to tax both the mortgage debts and the shares composing the same? It clearly would not. The fact that the tax on the mortgage debts would be paid by the association, and the tax

on the shares by the individual members, would make no difference.   It would still be double taxation.   The principle is clearly recognized by the Supreme Court in *Farrington vs. Tennessee*, 95 *U. S.*, 688.   The appellee, cited the following cases:  *The State vs. Cumb. & Pa. R. R. Co.*, 40 *Md.*, 52; *Broom's Legal Maxims*, (*7th Ed.*,) 585; *Emory vs. The State*, 41 *Md.*, 57; *The Tax Cases*, 12 *G. & J.*, 117; *Mayor & C. C. of Balt. vs. Balt. & Ohio R. R. Co.*, 6 *Gill*, 288; *Co. Comm'rs Anne Arundel Co. vs. Annapolis & Elkridge R. R. Co.*, 47 *Md.*, 611; *State vs. Powers*, 24 *N. J. L.*, (4 *Zabr.*,) 400.

*C. Dodd McFarland*, for the appellees, Milbourne, Clark and Marley.

The appellees claim that the shares of stock held by them in a building association are exempt from valuation and assessment, because it was not the design of the Legislature, as shown by a true construction of the legislation affecting homestead or building associations, to impose a tax on the shares of stock held by individual members.  *Mayor & C. C. of Balt. vs. Balt. & Ohio R. R. Co.*, 6 *Gill*, 297; *Co. Comm'rs Anne Arundel Co. vs. Annapolis & Elkridge R. R. Co.*, 47 *Md.*, 614.

The shares of stock in building associations are exempt from taxation, because all their property consists of mortgages upon property in this State, which mortgages, and the mortgage debts respectively secured thereon, are exempt from taxation.   The property of the associations being exempt from taxation, the amounts paid on the shares in them are, therefore, exempt.  *The Tax Cases*, 12 *G. & J.*, 117; *The State vs. Cumb. & Pa. R. R. Co.*, 40 *Md.*, 52; *Mayor & C. C. of Balt. vs. Balt. & Ohio R. R. Co.*, 6 *Gill*, 295; *Gordon's Ex'rs vs. Mayor & C. C. of Balt.*, 5 *Gill*, 231; *The State vs. Sterling*, 20 *Md.*, 502.

MILLER, J., delivered the opinion of the Court.

The appellee, Rice, is a member, and owner of four shares of the stock of "The Harlem Permanent Building Association of Baltimore City," and he was assessed therefor under the Act of 1876, ch. 260. He now claims exemption from taxation in respect to these shares, upon the ground that *all the capital and funds* of the association are invested in loans to its members, secured by *mortgages* on real or leasehold property, and that by the first section of this Act, "mortgages upon property in this State and the mortgage *debts* respectively *secured* thereon" are exempted from taxation. This exemption of the securities in which the funds are invested, he insists operates an exemption of the shares of the association in the hands of individual owners and members. It is not pretended that it was not competent for the Legislature of 1876, to repeal any previous exemption that had been granted to mortgages to building associations or to mortgages generally; and all *previous exemptions* from taxation which the Legislature had power to repeal, are expressly repealed by the second section of this Act. Assuming then that the appellee's counsel are right in the position that where the capital of a corporation is invested in securities exempt from taxation, such exemption carries with it the exemption of the shares of its stock in the hands of the owners, the question arises, does the exemption clause here relied on extend to and embrace the peculiar class of mortgages adopted and used by building associations? In entering upon this inquiry we must bear in mind the principle universally recognized, that to make out a case of exemption from the taxing power of the State, so essential to the support of its government, it is incumbent upon the party asserting the claim, to show that the power to tax in the particular case has been clearly relinquished, and if this has not been done in clear

and explicit terms, or by necessary implication, the question whether or not the exemption has been granted must be resolved in favor of the State. This doctrine must be applied to the construction of the clause in question, and in order to apply it the more correctly, we must examine the antecedent legislation upon this subject.

The formation of corporations known as Building Associations, was first authorized in this State by the Act of 1852, ch. 148. That Act after authorizing the peculiar form of mortgage, which is now so well known, declares that "Any *such* mortgage or mortgages, and the mortgage debt, or debts intended to be secured thereby, *as aforesaid*, is, and are hereby declared exempt from taxation; the property so mortgaged as aforesaid to the corporation, being taxed in the hands of the individual member or mortgagor." By the General Assessment Law of the same Session, (Act of 1852, ch. 337,) this express exemption was continued, for by that Act only property "now by law *liable to be valued* and assessed," was subject to taxation; and this exemption was also continued *in the same terms* by the Code, Art. 26, sec. 36.

The General Assessment Act of 1866, ch. 157, repealed *all exemptions*, and subjected all property, real, personal and mixed of all kinds and descriptions whatever, within the State, to taxation. But by the Act of 1867, ch. 341, certain exemptions were granted, and among them is the exemption of "all mortgages for purchase money in the hands of the original mortgagee, or his executors, administrators and legal representatives, in case of the death of the mortgagee, together with all equitable liens for the purchase money of lands and real estate which may remain due and unpaid." This is the only reference to mortgages in that Act, and it is clearly confined to a certain description of general mortgages. It is plain that it has no application whatever to mortgages given to build-

ing associations. But by sec. 88, of the General Corporation Act of 1868, ch. 471, sec. 36, of Art. 26, of the Code, was re-enacted in terms, and by this means the special exemption of this class of mortgages was *revived*.

Afterwards, by the Act of 1870, ch. 394, this proviso was added to the second section of the Act of 1867, ch. 341, "Nor shall any tax of any kind be assessed, levied or collected, on any mortgages of *any kind*, or on any mortgage or bill of sale upon any property in this State." These terms are broad and comprehensive, and plainly show that when the Legislature intended to grant exemption to every class and description of mortgages, they employed apt words to effect that object. This Act of 1870, was before the Court for construction in the case of *Emory, et al. vs. The State*, 41 *Md.*, 38, and it was there held that the intention of the Legislature in passing it was to exempt the mortgage securities themselves, and that it had no application to the taxation of the capital stock of corporations. In that case the Court also re-asserts the rule that "in order to entitle a party to claim exemption of any property from the common burden of taxation, it must clearly appear that it comes within the terms of the law under which the exemption is claimed."

This law was followed by the General Revenue Act of 1874, ch. 483, amending and re-enacting the 81st Article of the Code. Sec. 2, thus amended, describes property made liable to taxation, and this description includes "all debts secured by or investments in private securities of every kind, nature and description, *except mortgages*." This exception is an exemption of "*mortgages*," and this is the only reference to such securities which the law contains. In sec. 3, which provides other exemptions, is found the special exemption of "all shares of capital stock of building associations of which the funds and capital stock are invested in mortgages on real or leasehold property, sub-

ject to taxation to the extent of such investment." This exemption exactly meets the appellee's case, and if it were to be found in the Act of 1876, he would encounter no difficulty. But as we have said this latter Act repeals all antecedent exemptions over which the Legislature had repealing power. The terms of the repealing clause are most explicit and comprehensive, "and all Acts or parts of Acts exempting any other property, *except that exempted by this Act,* from valuation, assessment or taxation for State, county or municipal purposes, which *can be repealed* by this General Assembly, are, to the extent of such exemption, *whenever or however the same has been heretofore granted,* hereby expressly declared to be repealed to the extent of said exemption as aforesaid, and to be hereafter of no force or effect in granting such exemption." We entertain no doubt whatever that this clause effectually repeals, if they had not been repealed before, all special exemptions of mortgages to building associations, and of the shares of stock in such corporations contained in each and every of the antecedent statutes to which we have referred. The appellee's case, therefore, rests entirely upon the true construction and effect of the exemption contained in this law. What is it? It is found in the first section by way of exception to property made liable to taxation, and is in these terms: "All investments in private securities of every kind, nature and description belonging to residents of this State, *except* mortgages upon property in this State, and the mortgage *debts* respectively secured thereon." This, when read as an exemption, declares simply that "*mortgages* upon property in this State, and the mortgage *debts* thereby secured," are exempt from taxation.

From the review we have made of these laws, it appear that a *special exemption* of mortgages to building associations, was granted by the Act of 1852, which first autho-

316                MARYLAND REPORTS.

Appeal Tax Court of Balt. City *vs.* Rice.  Same *vs.* Jackson.  Same
*vs.* Janson.  Same *vs.* Milbourne.  Same *vs.* Clark.  Same *vs.* Marley.

rized their existence; that it was continued until repealed
by the Act of 1866; that it was then restored by the
Corporation Act of 1868; that during a portion of this
same period, exemptions of *mortgages*, or of *investments in
mortgages*, were granted by General Assessment Acts;
and that the Act of 1876, sweepingly repeals all previous
special exemptions, and, so far as mortgages are con-
cerned, retains simply an exemption similar in effect to
that embodied in some of the antecedent General Revenue
Statutes.  This action goes far to show that the purpose
of the Legislature in the passage of the Act of 1876, was
to repeal the special exemption in favor of this peculiar
class of mortgages, and to retain the exemption that had
been previously granted by general laws to mortgages of
a different character and description.  But apart from this
the terms of the exemption itself clearly point to and
define the mortgages intended to be exempted.  They are
mortgages upon property securing mortgage *debts*.  In
common parlance, a *debt* is a sum of money due from one
person to another, and in its legal acceptation, the term
means a sum of money due by certain and express agree-
ment, as by bond for a determinate sum, a bill, or note, a
special bargain, or rent reserved on a lease, where the
quantity is fixed and specific, and does not depend on any
subsequent valuation to determine it.  1 *Jac. Law Dic.*,
197, 198.  So the common understanding, as well as the
legal definition and effect, of a mortgage securing a *debt*,
is a conveyance of property by one person to another, as
security for the payment of a definite, ascertained sum of
money, *debitum in præsenti solvendum in futuro*, and which,
so far as the property will go, secures the payment of that
specific sum, at all events and irrespective of any future
contingency.  Such a conveyance usually contains a cove-
nant to repay, which raises a personal obligation on the
part of the mortgagor, and it is also now the common

practice to have the *debt* between the parties evidenced by
a promissory note, single bill, bond or some other written
instrument.   In our opinion, the exemption in question,
only extends to, and embraces mortgages and mortgage
debts of this description.   This construction gratifies all
the words of the exemption, and the rule by which
exemptions are to be construed, forbids any construction
which the language employed does not clearly justify.
But mortgages to building associations which the law has
sanctioned and which are now commonly used, are instru-
ments quite different in character and effect.   Such an in-
strument recites that the mortgagor member has received
an advance of a certain sum on his shares, upon condition
that he will execute a mortgage to secure, not the pay-
ment of that sum with interest, but to secure "the pay-
ments and performance of the covenants hereinafter
mentioned."   The payments which the succeeding cove-
nants require, are not payments amounting to the sum
advanced with interest, but of a certain weekly sum on
each of his shares, of the interest on the sum advanced,
and of all fines that may be imposed on him in accordance
with the constitution and by-laws of the association, and
these payments are to continue not for any definite time,
so that the amount due on any given day or week could
be ascertained, but until the *time arrives* when the associa-
tion shall have sufficient funds on hand, over and above
all losses and liabilities, to pay the holders of every
unredeemed share a specified sum.   It is evident, there-
fore, that the amount a mortgagor may have eventually to
pay under these covenants, is altogether uncertain.   It
may be more or less than the amount he has received as
an advance, and the payments may continue for a longer
or shorter period, according as the association meets with
success or failure in its management and operations.
The feature that prominently distinguishes a mortgage of

this character from an *ordinary mortgage securing a debt,*
is apparent, and has been pointed out in almost every
case in which the attention of this Court has been called
to such an instrument. Thus in *Robertson's Case,* 10 *Md.,*
397, where a mortgage of this description first came under
the notice of the Court, it was at once said "there is no
provision in this mortgage for the payment of the sum
named therein as the consideration for which it was exe-
cuted, nor any part of it *as a mortgage debt.*" And in lay-
ing down the rule for ascertaining the amount the mort-
gagee association would be entitled to receive *in praesenti*
out of the proceeds, in case the mortgaged property should
be sold, the Court say: "it is obvious that the sum actually
due cannot be ascertained by estimating the sum named
in the mortgage *as if it were a debt secured,* or money to
be repaid, there being no covenant in the mortgage, or any
obligation on the mortgagor, requiring him to repay that
sum or any part of it, *as such.*" It was also decided in
the same case that as the Act of 1852, prescribed the very
terms of such an instrument, and authorized its execution,
it was not subject to the provisions of the Act of 1825, ch.
50, (Code, Art. 64, sec. 2,) requiring a mortgage to specify
on its face the principal sum it was intended to secure, and
for the same reason was not obnoxious to the laws against
usury. The same peculiar and distinguishing charac-
teristics of these mortgages are also pointedly noticed in
*Shannon's Case,* 36 *Md.,* 394, in *Lister's Case,* 38 *Md.,* 118,
119, and in *Williar's Case,* 45 *Md.,* 562. We are there-
fore very clearly of opinion that mortgages of this descrip-
tion are not within the terms of this exemption in the
Act of 1876. The exemption in the second section of the
Act of 1878, ch. 413, is in substantially the same terms:
"*mortgages* upon property wholly within the State, and
the mortgage *debts* respectively *secured* thereon," and
must receive the same construction. Consequently the

Appeal Tax Court of Balt. City *vs.* Rice. Same *vs.* Jackson. Same *vs.* Janson. Same *vs.* Milbourne. Same *vs.* Clark. Same *vs.* Marley.

question, that has been raised and argued in other tax cases at the present term, as to the effect of a supposed repeal of the former Act by the latter, does not arise in this case.

But it has been argued, that the whole value of the shares of stock in these associations, consists in the value of the mortgages securing the payment of these weekly dues, and that to tax the shares while the property covered by the mortgages is also taxed, amounts to such double taxation as is prohibited by the 15th Article of our Declaration of Rights. We by no means admit that such is the character of these shares or that their value is to be thus estimated, but assuming it to be so, and that holders of redeemed shares, are, in the strict sense of the term, *borrowers* from the holders of unredeemed shares, and that the latter are in fact *lenders* of money on the faith of these mortgages, the question comes simply to this, is it *competent* for the Legislature to impose a tax upon investments in mortgages, in the hands of the mortgagees, when the mortgaged property securing them is also subjected to taxation in the hands of the mortgagors? Such taxation has been enforced in this State for a long period. It was in force at least from 1841 to 1867; and during this time it was made *lawful* for the *mortgagor* to insert in the mortgage a covenant that *he* will pay "all taxes, assessments, public dues or charges levied or to be levied by law on the mortgage debt or debts created or secured by such mortgage." *Act of* 1847, *ch.* 255, *Code, Art.* 64, *sec.* 4. As to the expediency of laws imposing such taxation, the Legislature are the exclusive judges. The Courts can only determine the question of *power*, and as to this we entertain no doubt. In our opinion the 15th Article of the Declaration of Rights, does not prohibit the Legislature from taxing to the mortgagees investments in mortgages, notwithstanding the property mortgaged to secure such investments may be taxable and taxed to the mortgagors.

It follows: that the order of Baltimore City Court, directing these shares to be stricken from the list of property assessed to the appellee must be reversed, and his petition dismissed with costs.

> *Order reversed, and*
> *petition dismissed.*

The same state of facts substantially is to be found in each of the cases of *Charles W. Janson, John S. Jackson, Elijah Milbourne, Hamilton G. Clark and James Robert Marley,* and all of them must be disposed of in the same way.   In some of these cases the parties claiming exemption hold what are termed redeemed shares, and in others what are called paid up shares.   But this in the view we have taken of the law, makes no difference.   By the first section of the Act of 1876, ch. 260, and the second section of the Act of 1878, ch. 413, the Legislature has subjected to taxation "*all shares* of stock in any company or corporation incorporated by or located in, and doing business in this State."   These building associations are incorporated under the laws of this State, and the *shares* of their stock, whether they be redeemed, unredeemed, or paid up shares, clearly fall within the terms of the law, and must be assessed and taxed to their respective owners.

> *Orders reversed, and*
> *petitions dismissed.*

(Decided 30th January, 1879.)