(Decided 10th March, 1885.)

---

## The Mayor and City Council of Baltimore *vs.* The Canton Company of Baltimore.

*Taxation—Corporations—Construction of Act of 1880, ch. 20, relating to the Assessment and Taxation of the real estate of stock Corporations—Act of 1874, ch. 483, sec. 65— Ground rents—Reversion—State Tax Commissioner.*

The Act of 1880, ch. 20, amending sec. 151 of Art. 81 of the Code, as re-enacted by the Act of 1878, ch. 178, provides that the president or other proper officer of every corporation formed under the laws

Mayor, &c., of Baltimore *vs.* Canton Company of Baltimore.

of this State or doing business therein, shall furnish a true statement of any real property which it shall own or possess, to the County Commissioners, or the Appeal Tax Court of Baltimore City, according to the location of said property; and such real property shall be valued and assessed by the said Commissioners or Appeal Tax Court respectively, to the said corporation, and they shall give duplicate certificates of such valuation and assessment to such president or other officer, who shall transmit one of such certificates, with his return of stock, to the State Tax Commissioner, and taxes shall be paid by such corporation on such assessment in the same manner as the same are levied upon and paid by individual owners of real property in such county or city; and that the Tax Commissioner shall deduct the assessed value of such real property from the aggregate value of all the shares of stock of such corporation, and divide the residuum by the number of shares of the capital stock, and the quotient shall be the taxable value of such respective shares of stock. The C. Co. of B., owning real estate in the City of Baltimore, leased it for terms of ninety-nine years, renewable forever, at a fixed annual rent, and the lessee of each lot covenanted to pay all taxes levied or assessed on said lot and on the improvements thereon, and on the rent reserved. These parcels of ground and the improvements upon them, were for the years 1880, 1881, 1882 and 1883, assessed at their full taxable value, including the reversions in fee, to the leasehold owners, by whom the taxes for those years were paid. HELD:

1st. That said corporation was not entitled to be considered an owner of real estate within the contemplation of the Act of Assembly, nor within the proper signification of those words as used in connection with the established tax system of the State.

2nd. That those corporations only are to be regarded as owners of real estate, the valuation of which is to be deducted from the valuation of their stock, to whom the land is directly assessable, and who are primarily chargeable with the taxes thereon.

3rd. That by force of the provision of sec. 73, Art. 81 of the Code, as re-enacted by the Act of 1874, ch. 483, sec. 65, requiring the lessees of real estate to pay the taxes thereon, the lessees of the C. Co. of B., and not the corporation itself, were the owners of the lands in question for the purposes of taxation; and it was only *taxable* owners to which the Act of 1880 must be taken to refer, when providing for deductions on account of assessments, made against corporations " owning or possessing real estate."

4th. That the nature of a landlord's reversion in land leased for ninety-nine years renewable forever, with irredeemable ground rents incident thereto, is not substantially that of an ordinary owner of land in fee simple, whose holding is of that nature contemplated by the Act of 1880, when speaking of owners of real estate.

5th. That the landlord's interest in the land, is but a form of money investment, analogous to that secured by a mortgage, And where a corporation invests money in a mortgage, the exemption of the mortgage debt from taxation does not exempt the shares of stock of the corporation to the extent of such investment.

6th. That the principles governing taxation in respect of mortgages would by analogy, seem applicable to the estate or interest of a landlord in real property under leases of the nature of those made by the C. Co. of B.

7th. That the Act of 1880, ch. 20, did not contemplate a deduction from the valuation of the capital stock of a corporation, because of its investments in irredeemable ground rents.

The Tax Commissioner is a ministerial officer only in making the abatement from the valuation of its capital stock of the valuation of the real property of a corporation. He acts solely upon the assessments of such real property as made by the County Commissioners or Appeal Tax Court, evidenced by their certificate to be furnished the president or other proper officer of the corporation.

The President of the C. Co. of B., furnished to the Appeal Tax Court for the years mentioned, a true statement of the said reversions in fee, and of the ground rents reserved thereon. Said reversions and ground rents were for each of said years valued and assessed by said Appeal Tax Court to said corporation, but no certificates of such valuation and assessments were furnished to its president or other officer, and therefore no certificates of such valuation and assessment were transmitted to the State Tax Commissioner; and none of such valuations and assessments were considered by him in ascertaining the taxable value of the shares of stock of said corporation. HELD:

That as said corporation took no steps to enforce the delivery of such certificate, or to appeal from the assessment made, the Tax Commissioner had no power but to certify to the Appeal Tax Court, the assessed taxable value of its shares of stock as he had ascertained and fixed it.

APPEAL from the Baltimore City Court.

The case is stated in the opinion of the Court. Verdict and judgment were rendered for the plaintiff for $476.48 with interest and costs. The plaintiff appealed.

The cause was argued before ALVEY, C. J., IRVING, RITCHIE, and BRYAN, J.

*Bernard Carter, City Solicitor,* for the appellant.

The uniform practice in Baltimore and throughout the State has been to assess lots of ground held under ninety-nine year leases, *as a whole,* to the party having the leasehold estate therein, and whose duty it has been, since the Act of 1812, ch. 191, to pay the taxes on the whole. For all purposes connected with valuation and assessment of real property, under our system of leases, the law treats the *tenant* as the *owner,* and charges him, as such, with the payment of all taxes levied on the *premises,* whether his lease contains a covenant to pay taxes or not. *Hughes vs. Young,* 5 *G. & J.,* 67; *Cooley on Taxation,* 288; *Burroughs on Taxation,* 223; *Phil., Wilm. & Balto. R. R. vs. Appeal Tax Court,* 50 *Md.,* 410–413.

Under the tax system of this State, and within the meaning of all laws regulating the valuation of property and the collection of taxes, the *owner* of real property is the actual holder of the ninety-nine year term, and this without regard to what other interest may be held by parties in reversion or otherwise. The decisions of this Court in the cases of *Appeal Tax Court vs. Western Maryland R. R. Co.,* 50 *Md.,* 298, and *Phil., Wilm. and Balto. R. R. Co. vs. Appeal Tax Court, idem,* 410–413, which were relied upon below to sustain the claim for a separate valuation and assessment of the respective interests of the lessor and lessee, not only do not establish that position, but are entirely consistent with and support the present contention of the appellant. In both cases the Court

recognized that the *whole taxable value* of the lot of ground was to be valued and assessed as a *whole* to the tenant for ninety-nine years. It happened that in the cases then before the Court the entire interest of the lessor in the premises was exempt, and only the leasehold estate was subject to taxation; hence, the decision was that the value of the leasehold estate only, subject to the rent reserved in the lease, should be assessed to the tenant. But clearly whatever and whosesoever interests in such lot were taxable at all, were to be valued and assessed to the tenant as the *taxable owner* of the whole.

Nothing in the Act of 1880, ch. 20, nor in that of 1878, ch. 178, suggests any intention on the part of the Legislature to make so sweeping a change in the long established practice of the State. On the contrary, all that was intended by these Acts was to provide for a valuation of the real property owned by corporations of this State, in the several counties or cities where such property might be located, and a separate valuation of the shares of their capital stock, and this they do in plain terms. These Acts form a part of the entire system of law regulating the assessment and collection of taxes in Maryland, and are to be read in connection with the other legislation on the same subject.

The list of real property owned by the corporation which is required to be valued to it separately is to include only such real property as the *tax laws* of the State recognize the corporation as the owner of. And this is all real property on which these laws require the corporation to pay the taxes and none other. The entire system of tax legislation, of which the Act of 1880, ch. 20, and the Act of 1878, ch. 178, now form a part, knows no owner of land, under a lease for ninety-nine years, other than the lessee, and the Legislature is to be presumed to have so intended in the Act now before the Court.

In the first place, the Act of 1880, ch. 20, amending section 151, Article 81, Code of Public General Laws,

(sections 141 and 142, Article 11, Revised Code, 1878,) provides that at the time of making the returns of stockholders, as required by law, the president of the corporation shall furnish to the Appeal Tax Court a true statement of the real property owned by such corporation in the city, "and such real property shall be valued and assessed to the said corporation so owning the same, &c.;" and "State, county and city taxes shall be levied upon and *paid by such corporation on such assessment,* in the same manner as the same are levied upon and paid by individual owners;" and "a duplicate certificate of such valuation and assessment shall be sent to the State Tax Commissioner," who is then required to deduct the assessed value of such real property, according to these certificates, from the aggregate value of the shares of stock.

It is clear that the real property is only to be assessed to the corporation when it has to pay the taxes, and therefore no real property, *the taxes on which are not to be paid by the corporation,* can be included in the statement here provided for *and assessed to the corporation*—the very language of the statute being that all taxes levied on the real property thus assessed to the corporation, *shall be paid by it.*

It will not escape the notice of the Court, that the construction contended for by the appellee will result in this state of things, that just in proportion as the *intrinsic* value of the shares of stock of the defendant corporation is enhanced, their *taxable* value will diminish. And its present claim is for deductions on account of reversions, largely in excess of the value of its shares of capital stock.

*William George Weld,* and *Arthur George Brown,* for the appellee.

The Act of 1880, ch. 20, is the law of this case. The object of that statute is to avoid the very result which

this appellant by this suit seeks to attain, namely, a tax both upon the *land* and upon the value of the land as included in the value of the shares of stock. Under any other construction of its purpose, the statute would be void. *State vs. Cumberland & Penn. R. R. Co.*, 40 *Md.*, 22; *Cooley on Constitutional Limitations*, (5th Ed.,) 612. That statute was before this Court for construction in the case of *American Coal Co. vs. County Com'rs of Allegany Co.*, 59 *Md.*, 185, wherein, at page 197, the Court said: "The corporation itself is under no duty or obligation to pay the taxes assessed upon the shares of stock of the individual stockholder, except as provided by the statute."

The statute requires that the value of real estate owned by the corporation shall be subtracted from the value of its shares of stock.

In this regard, it follows substantially the provision of the Act of 1878, ch. 178, sec. 151, which has been passed upon by this Court in the following terms:

"The purpose of this section was, in the first place, to furnish the local boards with the basis of taxation on the shares of stock of all corporations liable to assessment, and in the next, to make the taxes on such shares for county and municipal purposes payable to the county or city in which such stockholders resided." *Mayor, &c. vs. Balto. City Pass. Rwy.*, 57 *Md.*, 36.

In the above case of the *American Coal Co. vs. County Com'rs*, 59 *Md.*, 185, at page 193, the Court further say: "And while it is true that the shares of the capital stock of the corporation represent the capital stock and everything of which the capital stock is composed, whether invested in real estate or other kind of property, the *situs* of the investment, (other than the real estate of the company situated in this State,) is wholly immaterial." And page 194: "It is exclusively with the shares of stock and their true value as representing the entire corporate assets, that the tax commissioner has to deal, and

not with the nature and locality of the investment of the capital stock of the corporation, except as to the real estate of the company, situate within this State."

These ground rents are real estate—"real property," strictly and technically such within the express terms and the meaning of the Act of 1880, ch. 20. There is nothing ambiguous in the terms of the statute—all rules of construction are out of the case. *Potter's Dwarris on Statutes*, 143.

The ground rents now in question are rent services as contra-distinguished from rent charges. *Ehrman vs. Mayer, et al.,* 57 *Md.* 612, 621, 622; *Williams on Real Property,* (5th Ed.,) *top pages,* 242, 243, 247, 339.

The estate of the lessor is land—real estate. *Mayer on Ground Rents in Maryland,* 62, 64; *Myers, et al., Adm'rs, &c. vs. Silljacks,* 58 *Md.* 330.

The estate of the lessee is personal property. *Myers, et al., Adm'rs, &c. vs. Silljacks,* 58 *Md.* 330; *Taylor, et al. vs. Taylor, et al.,* 47 *Md.* 299; 2 *Blackstone's Com'rs,* 386.

These estates are susceptible of separate taxation. Where the City of Baltimore was owner of a reversion, which was therefore exempt from taxation, this Court held the tenant liable only for the leasehold value of the premises for purposes of taxation, he having covenanted to pay all taxes on the property. *Phil., Wilm. & Balto. R. R. vs. Appeal Tax Court,* 50 *Md.,* 410; and similarly, although the lease be redeemable. *Appeal Tax Court of Baltimore City vs. West. Md. R. R. Co.,* 50 *Md.,* 297, 298.

The Court in the former case, at page 413, say:

"If this were a case between landlord and tenant, where the question was made as to the amount of taxes for which the tenant should be allowed as against the rent claimed, the lease being silent, or requiring the landlord to pay the taxes without special reference to improvements, the tenant could claim only in respect

to the property as he leased it, and not for all the taxes paid upon its enhanced value by reason of large improvements placed thereon by himself and for his own exclusive use and benefit."

The landlord's interest then is susceptible of and liable to separate taxation as real estate.

The landlord is liable for all taxes, unless there is an agreement to the contrary. *Taylor's Landlord & Tenant, sec.* 341; *P., W. & B. R. R. vs. Appeal Tax Court,* 50 *Md.,* 411.

The tenant, though liable by statute, for taxes on the demised premises, has his action against the landlord for the sum so paid, or may deduct it out of the rent, unless otherwise agreed between the lessor and lessee. 1 *Md. Code, Article* 81, *sec.* 73; *Rev. Code, Article* 11, *sec.* 65, *page* 108.

Taxes are liens on the real property of the party indebted from the time the same are levied. *Rev. Code, Art.* 11, *sec.* 46. And the real estate of a delinquent tax payer may be sold to pay taxes whether there be personal property or not. *Revised Code, Art.* 11, *sec.* 50.

The city ordinances distinctly recognize the separate estates of lessor and lessee, and in reference to tax sales provide—(Baltimore City Code, 1879, Article 49, section 47, page 1085): "that in case the said leasehold interest and improvements shall not sell for the amount necessary to pay the taxes due on said lots," * * * "then the said collector shall sell the whole fee simple of such lots."

The Canton Company then is primarily liable on these reversions as real estate, and has discharged that liability by the payment of full taxes, pursuant to express agreement on the part of the tenants, who pay proportionally a lesser rental than the land would have produced if the lessor paid the taxes.

The assessment of taxes to the tenant in possession, through him reaches and fastens on the landlord, as as-

sessment to the trustee, was held by this Court to reach the beneficial owner, in *Latrobe, Trustee vs. Mayor, &c.,* 19 *Md.,* 21.

Irrespective of statute it is settled by repeated decisions in this State that exemption of the shares of the capital stock operates as an exemption of the property of a corporation, or so much of it as the corporation is fairly authorized to hold for the proper exercise of its franchises; and this upon the principle that the shares of the stock in the hands of the shareholders represent the property held by the corporation. *County Com'rs of Anne Arundel Co. vs. A. & E. R. R. Co.,* 47 *Md.,* 611; *Mayor and City Council of Balto. vs. Balto. & Ohio R. R.,* 6 *Gill,* 295; *State vs. Wilson, President, &c.,* 52 *Md.,* 638 and 690; *Appeal Tax Court vs. Rice,* 50 *Md.,* 312; *American Coal Co. vs. County Com'rs of Allegany Co.,* 59 *Md.,* 185, 193–4.

It is also settled law in our State, that when a tax has been laid upon stock in the hands of the shareholders, the real and personal estate of the company becomes exempt from taxation. "To tax both the real or personal property and the stock, would be a double tax, and therefore illegal and unjust." *Gordon's Ex'r vs. Mayor, &c., of Baltimore,* 5 *Gill,* 231, 236; *The Tax Cases,* 12 *G. & J.,* 117, 139; *App. Tax Court vs. West. Md. R. R. Co.,* 50 *Md.,* 274, 295.

The equally consistent proposition that the payment of full taxes upon the property of the company should, to that extent at least, exempt the shares of stock from taxation, is supported by the Act of 1880, ch. 20, which makes express provision for the same in the case of real estate—the case now before the Court. "Both cannot be taxed." *State vs. Wilson,* 52 *Md.,* 690.

The tax laws of Maryland have been often changed, from the Act of 1841, ch. 23, to the Act of 1880, ch. 20, and the decisions of this Court have uniformly sustained the principle of equal taxation. The Act of 1841, ch. 23,

sec. 1, exempted the securities belonging to any incorporated institution, the capital stock of which was made subject to taxation, while providing in general terms for the taxation of all real and personal property in the State.

Under this Act, and the additions and amendments thereto prior to 1874, this Court has held—That the Legislature has the right to impose upon all property within the State, *a just and proportionately equal public tax.* State vs. Mayhew, 2 Gill, 497 ; Mayor, &c., of Balt. vs. State, ex rel. Board of Police of Balto., 15 Md., 467.

This principle, resting upon the 15th Article of our Declaration of Rights, has been exhaustively considered by this Court in the more recent case of *Appeal Tax Court vs. Patterson,* 50 Md., 354, 367.

The shortest expression of the uniform course of decision that the principle of liability for taxes in proportion to actual worth in real and personal property, declared by the Declaration of Rights, is a bar to double taxation, and all legislative provisions for the assessment and collection of taxes should be so contrued as to avoid that result, is found in the cases of *State vs. Sterling,* 20 Md., 516; *Williams' Case,* 3 Bland, 222.

The Act of 1874, ch. 483, in pursuance of the principles laid down by the Courts, provided :

Sec. 84. That where a corporation *has no capital stock,* the property and assets of whatever nature, shall be assessed.

Sec. 87. That the stock of corporations shall be assessed at not less than the value of their real estate, and chattels real and personal; and

Sec. 88. For a deduction for property on which taxes are already paid.

The Act of 1876, ch. 260, provided—

Sec. 17. That all property permanently located in the City of Baltimore should be assessed to the owner in the assessment district in which it is located.

Mayor, &c., of Baltimore *vs.* Canton Company of Baltimore.

Under this Act it was held, in the case of *App. Tax Court vs. West. Md. R. R. Co.*, 50 *Md.*, 274, at page 295, that the State, by electing to tax the shares of stock in the hands of the shareholders, was precluded from levying and collecting taxes from the corporations in respect of their real and personal property.

The Acts of 1878, ch. 178, sec. 151, and of 1880, ch. 20, are substantially of identical effect in their general provisions. The former of these Acts, providing for deducting from the aggregate value of the shares of stock of corporations the value of all real estate owned by the same, is explained by this Court in the case of *Mayor, &c., of Balto. vs. Balt. City Pass. Rwy. Co.*, 57 *Md.*, 36.

A strong and very pertinent example of the principle contended for is afforded by the case of *State vs. Wilson*, 52 *Md.*, 640, 641, by the Court:

"It has been too well settled in Maryland, by the repeated decisions of this Court, to admit of further discussion, that for the purpose of taxation, the capital stock of a corporation is the representative of its property, that both cannot be taxed, and that the exemption of the one carries with it the exemption of the other. We have then a case in which the capital stock of a corporation is represented by, and its value consists, in part, of non-taxable real estate, and in part of taxable personal property. It follows that the stock is taxable to the extent that this taxable element enters into and forms part of its value, and to that extent only."

The tax which the appellant seeks to recover in this case, (over and above the amount for which the Court below gave judgment in its favor,) was not assessed or imposed in accordance with law, and is void. *Burke vs. Badlam*, 57 *Cal.*, 594, 601; *City and County of San Francisco vs. Mackey*, 21 *Federal Reporter*, 539; *State vs. Cumberland & Penn. R. R. Co.*, 40 *Md.*, 22.

*Charles B. Roberts, Attorney-General,* on behalf of the State of Maryland.

. . By the terms of the Act of 1880, ch. 20, the taxes on such real property are to be assessed to and paid by the corporation owning the same, "in the same manner as the same are levied upon and paid by individual owners of real property in such city or county." That is to say—. taxes are to be assessed to, and paid by, a corporation on its real estate in such cases only and in the same way as. taxes are paid on real estate by individuals. If there are kinds of real estate held by individuals upon which taxes are not levied to, and paid by, them, then to such real estate, when held by corporations, this Act can, by its express terms, have no application. Now it is well known that on irredeemable ground rents the owner of the reversion, because of the usual covenants in the lease, pays no taxes. All taxes are paid by the leasehold owner, who, for purposes of taxation, is regarded as the real owner of the fee. The express and unambiguous terms of this statute, instead of favoring the exemption contended for, excludes it.

It may be argued that as the stock of a corporation represents its property, (48 *Md.,* 119; 52 *Md.,* 638,) one or the other may be taxed, but not both; and as the lease-hold owner pays the tax on the valuation of the fee simple, the ground rent is really taxed, and the taxation of the stock of the corporation in addition, is double taxation. That this contention is in direct contravention to the established decisions of this Court is evident when the nature of a ground rent is correctly understood. The owner of a ground rent is *technically* the owner of *real estate,* as was also a mortgagee under the common law. But as between him and the lessee, the intention is that the owner of the reversion holds the land as security for the perpetual payment of interest on a sum of money equal to the value of the land when unimproved. It is a

form of money investment in all respects identical in purpose and intent with a mortgage. *Banks vs. Haskie*, 45 *Md.*, 217.

Therefore, it is that the individual (non-corporate,) reversioner, like the individual mortgagee, pays no taxes on the land securing the investment. When a corporation invests money in mortgages, the exemption of the mortgage debt from taxation does not exempt the shares of stock of the corporation mortgagee to the extent of such investment. *Emory, Presd't, &c. vs. State*, 41 *Md.*, 58.

Nor is it double taxation to tax the mortgagor on the full value in fee simple of the land mortgaged and a corporation mortgagee on the full value of its stock, when the mortgage debt is not exempt, as the case with building association mortgages. *Appeal Tax Court vs. Rice*, 50 *Md.*, 319.

If a mortgagor may be taxed because of his covenants, on the full value of the fee, and the mortgagee corporation be taxed to the full value of its stock, there seems to be no necessary implication exempting the stock of a corporation whose funds are invested in ground rents, an investment identical in purpose with a mortgage.

Again, the policy of this State is to tax stock, not as the property of the corporation, but as the property of the individual stockholders. *Ins. Co. vs. Mayor, &c.*, 23 *Md.*, 309; *American Coal Co. vs. County Comm'rs of Allegany Co.*, 59 *Md.*, 190.

When such policy is observed, the authorities show that investments by the corporation in securities exempt from taxation, *e. g.*, U. S. bonds, do not have the effect of exempting the capital stock. *Farrington vs. Tennessee*, 95 *U. S.*, 687; *Van Allen vs. The Assessors*, 3 *Wall.*, 573; *Bradley vs. The People*, 4 *Wall.*, 459; *National Bank vs. Commonwealth*, 9 *Wall.*, 353; *Minot vs. P., W. & B. R. R. Co.*, 18 *Wall.*, 206; *People vs. Home Ins. Co.*, 92 *N. Y.*, 328; *Porter vs. Rockford, &c., R. R. Co.*, 76 *Ill.*, 561;

*City of Memphis vs. Ensley*, 6 *Baxter*, 553; *Oswego Starch Factory vs. Dolloway, et al.*, 21 *N. Y.*, 449; *Relfe vs. Columbia Life Ins. Co.*, 11 *Mo. App.*, 374; *Quincy Bridge Co. vs. Adams Co.*, 88 *Ill.*, 615.

The statute, therefore, upon which the exemption is claimed, does not, either in clear and unambiguous terms or by necessary implication, grant to the stock of this corporation any exemption because of the investments in irredeemable ground rents.

RITCHIE, J., delivered the opinion of the Court.

This suit was brought by the appellant to recover of the appellee, the Canton Company, a corporation formed under the laws of Maryland and having its principal office in Baltimore City, taxes for the years 1880, 1881, 1882, 1883, on the aggregate valuation of the capital shares of stock of said company as assessed by the State Tax Commissioner and certified by him to the Appeal Tax Court of said city.

The first question arising upon the agreed statement of facts upon which the case was tried is, whether the said company was entitled to have deducted from said valuation of its stock the value of its reversions in fee in certain parcels of land in Baltimore City demised by it to various tenants under leases for ninety-nine years, renewable forever, in the form and mode customary in that city, which leases reserve certain irredeemable ground rents and contain covenants by the lessees to pay all taxes levied or assessed on said parcels of land, and the annual ground rents incident thereto, and all improvements thereon; and which parcels of land and the improvements·thereon have been assessed at their full taxable value, including said reversions in fee to which said ground rents are incident, to the lessees thereof or their assigns, who, for the purposes of this suit, are admitted to have paid to the collector of Baltimore City all the taxes thereon for the said years.

The second question presented is, assuming that the appellee was entitled originally to have such deduction made, whether it can now set up such a defence under the further facts admitted in the record, to wit: that the President of the Canton Company furnished to the Appeal Tax Court for the years mentioned a true statement of the said reversions in fee in and to said parcels of land and of the ground rents reserved thereon; that said reversions and ground rents were for each of said years valued and assessed by said Appeal Tax Court to the appellee, but no certificates of such valuations and assessments were furnished to its president or other officer, and therefore no certificates of such valuations and assessments were transmitted to the State Tax Commissioner, and none of such valuations and assessments were considered by him in ascertaining the taxable value of the shares of stock of the defendant corporation.

The Act of 1880, chap. 20, amending section 151 of Art. 81 of the Code, as re-enacted by the Act of 1878, chap. 178, provides, that the president or other proper officer of every corporation, formed under the laws of this State or doing business therein, shall furnish a true statement of any real property which it shall own or possess to the County Commissioners or the Appeal Tax Court of Baltimore City, according to the location of said property, and such real property shall be valued and assessed by the said Commissioners or Tax Court, respectively, to the said corporation, and they shall give duplicate certificates of such valuation and assessment to such president or other officer, who shall transmit one of such certificates, with his return of stock, to the State Tax Commissioner, and taxes shall be paid by such corporation on such assessment in the same manner as the same are levied upon and paid by individual owners of real property in such county or city; and that the Tax Commissioner shall deduct the assessed value of such real property from the aggregate

value of all the shares of stock of such corporation and divide the residuum by the number of the shares of the capital stock, and the quotient shall be the taxable value of such respective shares of stock.

It is contended by the appellee that its reversionary interest in the parcels of land demised by it as aforesaid, to the extent it has entered into the taxable valuation and assessment of said lands, brings it within the statutory provision just cited, and should have been deducted from the valuation made by the Tax Commissioner of its capital stock, as being real estate of which it is the owner; and, further, that the taxes upon the full value of said lands having been paid by its lessees, not to deduct the value of such interest from its capital stock would be in effect to subject it to double taxation.

In our construction of the law the appellee is not entitled to be considered an owner of real estate within the contemplation of the Act of Assembly, nor within the proper signification of those words as used in connection with the established tax system of the State.

Those corporations only are to be regarded as owners of real estate, the valuation of which is to be deducted from the valuation of their stock, to whom the land is directly assessable, and who are primarily chargeable with the taxes thereon. It is only when a corporation is thus liable for the taxes on real property that the law relieves its stock as representative of that property. The relation between the land and the stock must be thus direct. It is not such taxation as may incidentally burden the resources or reduce the profits of corporations, and incidentally or circuitously affect the market value of their stock for which it is the design or policy of the law to allow an abatement.

Nor is it compatible with public convenience and the prompt collection of revenue, for the State to trace out all the sub-divided or qualified interests that may be held in

real estate, and seek to hold the various owners responsible. Its policy is to assess the fee simple value of the land to the holder of the possession, where its real owner is not apparent or accessible, leaving the parties interested to adjust the proportions of liability between themselves. This general principle is stated on page 223 of *Burroughs on Taxation,* as follows:

"It is the fee simple in land that is assessed. The law does not regard the different interests in the assessment. It looks to the person having the present right of enjoyment, whether the tenant for life or years, for the tax on the fee simple value of the land, and such person is the one to be assessed with the land."

This policy is recognized in the Act of 1812, chap. 112, sec. 36, and with specific reference to leasehold estates. As incorporated in the Code, Art. 81, sec. 73, Act of 1874, chap. 483, sec. 65, it enacts:

"The tenant or person holding any leasehold estate, shall pay to the collector the taxes levied on the demised premises, and shall have his action against the landlord for the sum so paid, or may deduct the same out of the rent reserved, unless otherwise agreed between the lessor and lessee."

By force of this provision, the lessees of the appellee, and not the appellee itself, are the owners of the lands in question for the purposes of taxation; and it is only *taxable* owners to which the Act of 1880 must be taken to refer when providing for deductions on account of assessments made against corporations "owning or possessing real estate."

On other grounds also we do not think the interest of the appellee, although an element in the taxable valuation of the lands, is such an ownership or possession of real estate as was meant by the Act of 1880, to be deducted from the assessment of its stock.

In the first place, the leases contain covenants by which as part of the consideration of making them, all the taxes

shall be paid by the lessees. The obligation is thus transferred to them to the relief of the appellee as lessor. It may be that the tenants would have consented to a larger reservation of rent, but for assuming this burden; but this assumption cannot be accepted as a basis for an ascertained valuation of real estate chargeable to the appellee, and to be set off against its stock. The same effect on the amount of rent to be reserved, might be predicated of a covenant to improve, or of any other stipulation of the tenant.

The nature of a landlord's reversion in land leased for ninety-nine years, renewable forever, with irredeemable ground rents incident thereto, is not, substantially, that of an ordinary owner of land in fee simple, whose holding is of that nature, we think, contemplated by the statute of 1880, when speaking of owners of real estate. As said by this Court in *Banks vs. Haskie*, 45 *Md.*, 217, in discussing the nature of such a conveyance: "It seems to us quite clear, that the intention was on the part of the lessor to secure the prompt payment in perpetuity of the interest on a sum of money equivalent to the value of the property in fee at the time the lease was made, and on the part of the lessee to acquire a perpetual interest in the leasehold premises which would justify his making permanent improvements thereon, and enable him to avail himself of the value of the property thus enhanced, as well as of its increase in value arising from other causes. * * * * Instead of selling the property in fee for its then value, and investing the proceeds in other securities, (the owner,) resorts to this method of deriving an income from it, and making a secure and permanent investment of its value in the land itself."

The landlord is not affected by the rise or fall in the value of the fee; any enhancement in its value enures to the leasehold estate. The ground rent issuing therefrom remains fixed in amount, and the lessor is really interested

Mayor, &c., of Baltimore *vs.* Canton Company of Baltimore.

in the subsequent value of the land and the erection of improvements thereon, only as furnishing a sufficient pledge or security for the sum certain to be annually paid to him. The buildings that may be erected do not as in the case of an ordinary owner of the fee merge in it as fixtures to swell the assessment against him, but become an additional element of real and taxable value to the estate of the tenant. The landlord's interest in the land is but a form of money investment, analogous to that secured by a mortgage. And when a corporation invests money in a mortgage, the exemption of the mortgage debt from taxation does not exempt the shares of stock of the corporation to the extent of such investment. *Emory vs. State*, 41 *Md.*, 58. Nor is it double taxation to tax the mortgagor on the full value of the land he has mortgaged, and a corporation mortgagee on the full value of its stock, when the mortgage is not exempt, as in the case of Building Association mortgages. *Appeal Tax Court vs. Rice*, 50 *Md.*, 319. The principles governing taxation in respect of mortgages would, by analogy, seem applicable to the estate or interest of a landlord in real property under leases of the nature of those made by the appellee.

After full consideration, we are clearly of opinion that the Act of 1880 under which the appellee claims exemption does not contemplate a deduction from the valuation of the capital stock of a corporation, because of its investments in irredeemable ground rents.

But if we had not reached the conclusion just stated, we should question the right of the appellee now to interpose the defence it has set up, in view of the means prescribed by the statute law through which such a defence could have been availed of. The Tax Commissioner is a ministerial officer only in making the abatement from the valuation of its capital stock of the valuation of the real property of a corporation.

He acts solely upon the asseesment of such real property, as made by the County Commissioners or Appeal

Tax Court, evidenced by their certificate to be furnished the president or other proper officer of the corporation, and by such officer to be transmitted to him. Provision is also made in the statute for appeal from such assessment by the corporation to a tribunal specially constituted to entertain such appeal. The appellee took no steps to enforce the delivery of such a certificate, which the statement of facts sets out was not furnished, or to appeal from the assessment said to have been made; and the Tax Commissioner in that state of case had no power but to certify to the Appeal Tax Court, the assessed taxable value of its shares of stock as he had ascertained and affixed it.

In accordance with the views we have expressed, the judgment of the Baltimore City Court must be reversed, and the cause remanded that judgment may be entered in favor of the appellant, for such sum as the tax rate of the years 1880, 1881, 1882, and 1883 respectively, calculated upon the values of the shares of stock of the appellee, as fixed for those years by the State Tax Commissioner, and set forth in the agreed statement of facts, shall amount to.

*Judgment reversed, and*
*cause remanded.*

(Decided 11th March, 1885.)